**JAY MYOUNG YOON, Appellant (Cross–Appellee, Respondent below),**

v.

**SUNSOOK YOON, Appellee (Cross–Appellant, Petitioner below).**

No. 49S02–9906–CV–353.

Supreme Court of Indiana.

June 21, 1999.

David A. Clase, Indianapolis, Indiana, Karen A. Wyle, Bloomington, Indiana, Attorneys for Appellant.

J. Gregory Garrison, Michael A. Kiefer, Martha J. Mondou, Scott Richardson, Indianapolis, Indiana, Attorneys for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

This case deals with the goodwill value of a business or professional practice for the purpose of property division in a marriage dissolution. We hold that goodwill that is attributable to the business enterprise is divisible property, but to the extent that the goodwill is personal to the professional or business owner, it is a surrogate for the owner's future earning capacity and is not divisible.

### Factual and Procedural Background

The marriage of Sunsook (Yoon) Nam and Jay Yoon was dissolved on August 15, 1996. The trial court awarded custody of the parties' two minor children to Nam and ordered

Yoon to pay child support. The court divided the property of the marriage, including Yoon's medical practice, 55.4% to Nam and 44.6% to Yoon.

*Porter v. Porter* held that "a professional practice's goodwill value may be included in the marital estate for purposes of property distribution pursuant to a dissolution decree." 526 N.E.2d 219, 225 (Ind.Ct.App. 1988). The trial court found that Yoon's medical practice had "intrinsic value ... as that term is defined by the case of *Porter*" and valued the practice at $2,519,366, a value supported by the expert opinion explained below. Yoon appealed raising several issues including whether the trial court's division of property erroneously counted his future earning capacity both as goodwill in the value of his medical practice [1] and again to justify unequal division of the marital property.[2] The Court of Appeals reversed and remanded on an issue of child support but affirmed the trial court on all other grounds. *Yoon v. Yoon*, 687 N.E.2d 201 (Ind.Ct.App.1997).

### Standard of Review

 The trial court's order includes findings of fact and conclusions of law pursuant to Trial Rule 52. The findings or judgment are not to be set aside unless clearly erroneous, and due regard is to be given to the trial court's ability to assess the credibility of the witnesses. Ind. Trial Rule 52(A); *Shell Oil Co. v. Meyer*, 705 N.E.2d 962, 972 (Ind.1998). We disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Chidester v. City of Hobart*, 631 N.E.2d 908, 910 (Ind.1994). We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor

of the judgment. *Id.* A judgment is clearly erroneous under Trial Rule 52 if it relies on an incorrect legal standard. *Meyer*, 705 N.E.2d at 972, 979; *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997).

### I. Goodwill in Valuing a Professional Practice

 Goodwill has been described as the value of a business or practice that exceeds the combined value of the net assets used in the business. *In re Marriage of Talty*, 166 Ill.2d 232, 209 Ill.Dec. 790, 652 N.E.2d 330, 333 (1995) (quoting *In re Marriage of White*, 151 Ill.App.3d 778, 104 Ill.Dec. 424, 502 N.E.2d 1084 (1986)). Goodwill in a professional practice may be attributable to the business enterprise itself by virtue of its existing arrangements with suppliers, customers or others, and its anticipated future customer base due to factors attributable to the business. It may also be attributable to the individual owner's personal skill, training or reputation. This distinction is sometimes reflected in the use of the term "enterprise goodwill," as opposed to "personal goodwill."

 Enterprise goodwill "is based on the intangible, but generally marketable, existence in a business of established relations with employees, customers and suppliers." Allen Parkman, *The Treatment of Professional Goodwill in Divorce Proceedings*, 18 FAM. L.Q. 213, 215 (1984). Factors affecting this goodwill may include a business's location, its name recognition, its business reputation, or a variety of other factors depending on the business. Ultimately these factors must, in one way or another, contribute to the anticipated future profitability of the business. Enterprise

---

**1.** Nam argues that Yoon did not challenge *Porter* as controlling authority in the trial court and therefore should not be heard to raise the issue on appeal. However, in cross-examining Nam's expert Alerding, Yoon's counsel clearly stated disagreement with *Porter's* inclusion of goodwill that is not transferrable, but correctly acknowledged that the trial court was bound by the case. This is sufficient to preserve the issue for appellate review.

**2.** The other issues are: (1) the trial court erred by failing to abate support payments during the school year when the children were at college

and by adopting his 1995 income as a guide for child support where evidence established that his income had since declined; (2) the trial court erred in adopting a valuation of his medical practice that included a value for goodwill and ignored evidence of his health problems and declining business; (3) the trial court erred in excluding Yoon's testimony as an expert on his health conditions; and (4) the trial court erred in denying his motion for recusal. Nam cross-appealed arguing that the trial court erred in not finding that Yoon had dissipated assets.

goodwill is an asset of the business and accordingly is property that is divisible in a dissolution to the extent that it inheres in the business, independent of any single individual's personal efforts and will outlast any person's involvement in the business. *See Talty*, 166 Ill.2d 232, 209 Ill.Dec. 790, 652 N.E.2d at 334; 38 Am.Jur.2d *Goodwill* § 9 (1999). It is not necessarily marketable in the sense that there is a ready and easily priced market for it, but it is in general transferrable to others and has a value to others.

Case law from other jurisdictions has recognized enterprise goodwill as a divisible asset. For example, a husband's 50% ownership in a professional corporation which performed medical and laboratory services was divisible as enterprise goodwill where evidence indicate[d] that the patient does not develop a personal relationship with the physician. One seeks out the clinic because of advertising, reputation or referral. . . . There is no reason to expect that a change in physicians would lead to a significant decline in business as it might in a private practice.

*Nehorayoff v. Nehorayoff*, 108 Misc.2d 311, 437 N.Y.S.2d 584, 591 (N.Y.Sup.Ct.1981).

■ In contrast, the goodwill that depends on the continued presence of a particular individual is a personal asset, and any value that attaches to a business as a result of this "personal goodwill" represents nothing more than the future earning capacity of the individual and is not divisible. *See Bressler v. Bressler*, 601 N.E.2d 392, 397 (Ind.Ct. App.1992) (future earnings are not marital property subject to division); *see also* Martin J. McMahon, Annotation, *Divorce and Separation: Goodwill in Medical or Dental Practice as Property Subject to Distribution on Dissolution of Marriage*, 76 A.L.R. 4th 1025, 1044–48 (1990). Professional goodwill as a divisible marital asset has received a variety of treatments in different jurisdictions, some distinguishing divisible enterprise goodwill from nondivisible personal goodwill and some not. *Id.* (collecting cases).

■ Indiana's dissolution law opts for recognition of this distinction. The General Assembly has determined that the "relative earning power" of the parties is not a divisible asset because it is not property, but may be considered in determining the percentage of property to be given to each. Ind Code § 31–15–7–5(5) (1998). Accordingly, we join the states that exclude goodwill based on the personal attributes of the individual from the marital estate. *See e.g., In re Marriage of Zells*, 143 Ill.2d 251, 157 Ill.Dec. 480, 572 N.E.2d 944 (1991) (goodwill in professional practice is not marital property but is an aspect of income potential to be considered in maintenance and support); *Powell v. Powell*, 231 Kan. 456, 648 P.2d 218 (1982) (goodwill in medical practice is not an asset subject to division in dissolution); *Holbrook v. Holbrook*, 103 Wis.2d 327, 309 N.W.2d 343 (Ct. App.1981) (marital estate does not include goodwill of husband's partnership interest in law firm); *Nail v. Nail*, 486 S.W.2d 761 (Tex.1972) (goodwill in a doctor's practice not a divisible asset because it does not possess value or constitute an asset separate and apart from the doctor's person or ability to practice the profession).

■ To the extent that *Porter* suggests that both personal and enterprise goodwill are to be included in the value of a business or professional practice in a dissolution, it is disapproved. Rather, before including the goodwill of a self-employed business or professional practice in a marital estate, a court must determine that the goodwill is attributable to the business as opposed to the owner as an individual. If attributable to the individual, it is not a divisible asset and is properly considered only as future earning capacity that may affect the relative property division. In this respect, the future earning capacity of a self-employed person (or an owner of a business primarily dependent on the owner's services) is to be treated the same as the future earning capability and reputation of an employee. *See* Parkman, *supra*, at 221–22.

■ Some ownership interests in a professional practice are properly viewed as divisible property even if goodwill is a component of their value. Otherwise stated, even a professional practice can have an enterprise goodwill component to its value. Some of the

cases following *Porter* illustrate this point. In *Cleary v. Cleary*, the Court of Appeals held that goodwill of a medical practice was divisible where the practice had an expectation of continued public patronage based on its exclusive contracts to provide emergency room physicians to two local hospitals. 582 N.E.2d 851, 853 (Ind.Ct.App.1991). The goodwill described in *Cleary* is enterprise goodwill because the expectation of future patronage is based not on the identity of the physicians but on the exclusive service contracts that were attributes of the business. Similarly, in *Berger v. Berger*, the Court of Appeals quite properly remanded to determine what percentage of the future amounts to be received for honoring a restrictive covenant was attributable to the goodwill of the husband's dental practice as a commodity sold to the buyer and what percentage was in lieu of future earnings. 648 N.E.2d 378, 384 (Ind.Ct.App.1995). Only the amounts associated with the goodwill of the practice were to be included in the marital estate. *Id.* at 383–84.

Yoon argues that attributing any value to goodwill inevitably triggers a battle of experts over the choice of valuation methods and that the difficulty in predicting the outcome of a valuation dispute substantially increases the time and expense of resolving these issues by agreement or by resort to the court. *See* Andrew Z. Soshnick, *Valuing Business Goodwill in Marital Dissolution Actions: Boldly or Blindly Striving to Grab the Brass Ring from the Blue Sky?*, RES GESTAE, July, 1995, at 16. For that reason, Yoon argues, value based on goodwill should be excluded altogether from divisible property. The problem of valuation may be significant, but the argument that the cost of resolving these issues is higher than the benefit of an equitable division of property is for the legislature to resolve. For the reasons given, items fairly described in ordinary parlance as "goodwill" or clearly so classified as goodwill by an accountant may be valuable assets accumulated during the marriage or they may be reflective only of the reputation or ongoing efforts of an individual. The current statute tells courts to divide the former and permits them to consider the latter in allocating the division between the parties. Hopefully the principles enunciated in this case will help to lend some predictability to future results.

■ In sum, to the extent a business or profession has goodwill (or has a value in excess of its net assets) it is a factual issue to what extent, if any, that goodwill is personal to the owner or employee and to what extent it is enterprise goodwill and therefore divisible property.

## II. Valuation of Yoon's Practice

Nam offered a valuation of Yoon's medical practice by R. James Alerding and Blue & Company L.L.C. Alerding concluded that the value of Yoon's practice was $2,519,366 of which $2,339,000 was "the intangible Value of Dr. Jay M. Yoon on an Intrinsic Value Basis." Alerding testified that the "intrinsic value of the practice" is the "value of a practice to the physician as opposed to the value of the practice as a tradable or market value."

Based on this premise, Alerding valued Yoon's practice by giving equal weight to each of three valuation methods, i.e., taking the mean of the results of the three. Apart from adjusting for receivables and a few other items, each of these applied a factor to gross receipts of the practice to arrive at a valuation. Alerding took the view, with which we agree, that the form of business organization is essentially irrelevant to this analysis although it may have income tax consequences. Similarly, although the issue arises frequently in the context of a professional practice, the same principles apply to any self-employed individual.

Two of the three methods Alerding used capitalized an income stream to measure the "intangible value" of Yoon's practice. In simplified form[3] these were 1) comparison of

---

**3.** The first two methods used data from 1990 through 1994 weighing the most recent years more heavily (i.e. assigning weights of 1 through 5 to 1990 through 1994). For 1994, Alerding concluded that Yoon's bank deposits indicated a gross revenue level higher than reflected on his income tax returns and came up with valuations based on both federal income tax returns and his

Yoon's net income to an industry standard ratio of physician compensation to gross receipts of the practice[4] and 2) comparison of Yoon's net income to industry averages for "Hematology/Oncology."[5] The third method was a "rule of thumb" that a practice has a value of a percentage of gross receipts that "usually runs between forty and sixty percent." Alerding testified that this method was "something of a leveler" and was perhaps most applicable to family practice. It is based on the value of the patient base if it were to be sold, typically, to a hospital or a group practice.[6] Alerding testified that the first of the three methods accounts, at least in rough terms, for differences in the effort expended by the physician, but did not make a similar claim for the other two.

■■■ According to Alerding's testimony, this "intrinsic value" is the value of the practice "to the physician." This appears to equate to the value of the physician's future earning capacity. The methods used essentially compare the profitability of a given practice to industry norms. This variance, however, could obviously be due to factors that are unique to the individual (a famed surgeon can command very high rates for services) or to the practice (a near monopoly in a geographic area where there is little cost containment effort). Because it does not differentiate between value uniquely dependent on the physician, the methodology used by Alerding conflicts with the mandate of the statute that only property be divided. Moreover, Alerding and *Porter*, 526 N.E.2d at 224, stated that the value of a professional practice need not be marketable and the trial

court expressly found "intrinsic value beyond its market value." This approach is equally incompatible with the statutory scheme. From this we can only conclude that the trial court's property division included a value attributable to Yoon's future earning capacity. Accordingly we reverse and remand for a determination of the value of Yoon's practice attributable to the practice as a business without Yoon.

Although we do not find the trial court's approach consistent with the statute, we also do not fully agree with Yoon's analysis. As noted above, we do not agree that all goodwill of Yoon's practice is necessarily excluded from divisible property. Yoon contends that a portion of his very large gross revenue is attributable to his hard work and long hours. That may be true, but it is not necessarily dispositive. If Alerding is correct that there is a value in a patient base that is roughly proportional to gross receipts, perhaps some of the value of enhanced gross revenue inheres in the business even if it was generated by individual effort. The record is silent on these points. Nor is there any discussion of whether the rate at which patients return for treatment varies with the type of practice or, if so, how that affects the value of a given level of annual receipts to a practice buyer.

Alerding testified that his first method (attributing an industry standard ratio of physician income to gross receipts) automatically adjusted for unusually hard work and long hours. He explained that by pointing out that the higher level of gross receipts, the lower the percentage of costs to receipts, i.e.

reconstructed gross receipts for that year, which represented 5/15 of the weight of the five year period.

4. According to Alerding, over the years in question physician compensation averaged approximately 28% of the gross receipts of the practice. Yoon's federal income tax return showed net income in the range of 80% of gross. This method attributed the excess of the 80% over 28% (which averaged $442,000) to "excess physician compensation." Capitalized at 20% this results in a value of $2.2 million using Yoon's tax information and $2.7 million based on Alerding's reconstruction of Yoon's 1994 gross receipts.

5. Average physicians in these categories earned about $210,000 over the years in question compared to Yoon's approximately $1,000,000. Al-

erding capitalized the difference (which averaged $528,000 over the five years based on excess in the range of $800,000 less pro forma taxes of approximately $300,000) at 20% to produce a value of $2.6 million using Yoon's tax return information and $3.3 million using reconstructed 1994 gross receipts.

6. This method according to Alerding produces a value of 55% (an unexplained choice of percentage from the identified range of 40% to 60%) of the most recent year's gross receipts of $1,140,-000 or $627,246 based on Yoon's tax returns and $989,000 based on Alerding's reconstructed picture of Yoon's 1994 gross receipts.

because a large part of a physician's costs are fixed, the higher the level of receipts, the higher the profit margin on the incremental dollar. This is presumably correct, but what it says, in substance, is that the use of an industry average percentage of profit to gross as a measure of value undervalues a business that has an unusually high level of gross receipts. The goal in a dissolution, however, is not to value the business (including the professional) for a buyer. Rather it is to identify the portion of the value that is attributable to the business without the professional's continued participation. To the extent that the high level of receipts is due to factors unique to Yoon, for example, unusually long hours, the enterprise value, if any, is only whatever value exists in the patient base and would be transferrable to a buyer unwilling to work the same long hours.

There was no evidence presented that the business itself has goodwill associated with it and Alerding declined to express an opinion as to the value a willing buyer might pay for Yoon's practice without Yoon. Yoon testified that he does not obtain new patients through a contract or an automatic referral system and Nam points to no other evidence that the practice as a business had contracts for services or other assets that would remain with the practice were Yoon not the physician.

In sum, to the extent that goodwill of a professional practice is "personal goodwill," its value is properly considered under Indiana Code § 31–1–11.5–11(c) which requires the court to consider the earning capacity of each spouse if it deviates from the equal division presumption, but is not itself "property" that is to be divided. To the extent goodwill is enterprise goodwill, it is divisible. Accordingly, we remand to the trial court for a determination of the value of Yoon's practice in excess of the value attributable to Yoon's personal goodwill, and for other proceedings consistent with this opinion.

### Conclusion

We grant transfer and remand to the trial court for further proceedings consistent with this opinion. We summarily affirm the decision of the Court of Appeals with respect to the following issues: child support calculations, exclusion of Yoon as an expert on his medical conditions, motion for recusal and dissipation of marital assets. Ind. Appellate Rule 11(B)(3).

SHEPARD, C.J., and SELBY, J., concur.

SULLIVAN, J., dissents with opinion in which DICKSON J., concurs.

SULLIVAN, Justice, dissenting.

I respectfully dissent from the Court's opinion overruling the well-established precedent of *Porter v. Porter,* 526 N.E.2d 219 (Ind.Ct.App.1988), *transfer denied.*

While the *Porter* rule may be too sweeping in including as divisible marital property all of what the Court today calls "personal goodwill," the analysis of the Court of Appeals in *Porter* convinces me that much of personal goodwill is distinct from future earning capacity. *Id.* at 223–25 (quoting *Marriage of R.M. Lukens,* 16 Wash.App. 481, 558 P.2d 279 (1976)). Employing the hypothetical situations used in the *Lukens* case, I think it beyond debate that the value of the personal goodwill of Dr. Yoon's practice would be substantially less than that found by the trial court here if he was just beginning his practice or if he was opening a brand new practice in an entirely new geographic location. These differences would be attributable to value in the practice developed during the marriage and should be considered a marital asset. *See Porter,* 526 N.E.2d at 225 (*quoting Lukens,* 558 P.2d at 281). That is essentially what Judge Friedlander, writing for the Court of Appeals, held here. *Yoon v. Yoon,* 687 N.E.2d 201, 204 (Ind.Ct.App.1997). For that reason, I would deny transfer in this case.

DICKSON, J., concurs