# FOR PUBLICATION



**FILED**
May 25 2012, 8:53 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ALAN D. WILSON**
Kokomo, Indiana

ATTORNEY FOR APPELLEE:

**WILLIAM E. BECK, II**
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CODY DALLAS,                                )
                                            )
    Appellant-Defendant,                )
                                            )
           vs.                    )     No. 80A02-1110-CT-925
                                            )
BRANDON CESSNA,                             )
                                            )
    Appellee-Plaintiff.                 )

APPEAL FROM THE TIPTON CIRCUIT COURT
The Honorable Thomas R. Lett, Judge
Cause No. 80C01-0905-CT-215

**May 25, 2012**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Cody Dallas (Dallas), appeals the trial court's judgment finding Dallas jointly and severally liable to the Appellee-Plaintiff, Brandon Cessna (Cessna), for damages following intentional acts of battery.

We affirm.

## ISSUES

Dallas raises two issues on appeal, which we restate as:

(1)  Whether the trial court erred when it imposed joint and several liability for an intentional tort that originated in a crime; and

(2) Whether Dallas' intentional touching of Cessna was a proximate cause of Cessna's injuries.

## FACTS AND PROCEDURAL HISTORY

In the Fall of 2007, Cessna, a freshman at Indiana University in Bloomington, was dating Kayla Schoultz (Schoultz).  Schoultz had previously dated Cody Lewellen (Lewellen), a student at IUPUI.  In September of 2007, Schoultz was visiting with Cessna when she received a phone call from Lewellen.  Cessna took the phone and told Lewellen that Schoultz did not want to talk to him.  He also used Facebook to tell Lewellen not to have any more contact with Schoultz.  In turn, Lewellen posted derogatory language on Cessna's Facebook Wall.  At some point, Cessna called Lewellen telling him that "he wanted [Lewellen] to come to Bloomington so he could fight [him]."  (Appellant's App. p. 61).

2

Around midnight, on September 28, 2007, Lewellen, together with Dallas and another friend, Kyle Morris (Morris), drove to Bloomington to pick up Dallas' car which had been left in Bloomington after a sporting event the previous weekend. On the way to Bloomington, Dallas learned for the first time that Lewellen and Cessna planned to fight. Lewellen told Dallas that there was a girl he used to talk to and "Cessna was with her now[.]" He also informed his friends about Cessna's phone call. Lewellen and Dallas started texting Cessna, telling him that "he was going to get his butt kicked." (Appellant's App. p. 69). Cessna responded "Oh, you can think whatever you want. I'm drunk, so that's the only way you'll be able to beat me up." (Appellant's App. p. 69). Arrangements were made to meet up at the Eigenmann Quad.

Outside the Eigenmann Quad, Morris and Dallas hid out of sight behind an air conditioning unit as Lewellen faced off against Cessna. Cessna and Lewellen had words and began arguing. They pushed and shoved each other. Lewellen threw a left hook and hit Cessna on the right side of the face. Cessna fell straight to the ground. Lewellen "dragged him a little ways, straddled him, and then gave him a bunch of blows to the head and face." (Transcript p. 173). Cessna never hit Lewellen. As Dallas and Morris emerged from behind the air conditioning unit, Morris noticed that Cessna was on his back, bleeding out of his nose, and appeared to be unconscious. Lewellen turned and started to walk to the car with Morris. When Lewellen looked back, he saw Dallas kicking Cessna right in the face. Immediately after the fight, Lewellen contacted Schoultz and told her that he had just left Cessna "in a puddle of his own blood." (Appellant's App. p. 142).

Later that night, Lewellen was contacted by the police and gave a statement. On September 29, 2007, the State filed an Information, charging him with battery resulting in serious bodily injury, a Class C felony. After Lewellen was charged, he agreed to contact Dallas to get a tape recorded statement. During this telephone conversation, Dallas admitted that he "only kicked [Cessna] one time. And it was a good kick though, I broke his nose, I'm sure of that." (Appellant's App. p. 81). On July 1, 2008, the State charged Dallas with disorderly conduct, a Class B misdemeanor. Both Lewellen and Dallas entered into plea agreements with the State. On January 13, 2009, Lewellen pled guilty to battery resulting in serious bodily injury, a Class C felony, and was sentenced to four years with three years suspended to probation. On February 27, 2009, Dallas pled guilty to disorderly conduct, a Class B misdemeanor, and was ordered to pay court costs and a fine.

Following the beating, Cessna was taken to the hospital where he remained for twelve hours. He suffered cuts and abrasions to his head, bruising around his eyes and face, a fractured nose, and a subarachnoid bleed in his brain. He was addled and had trouble thinking. Cessna's family members indicated that he has undergone a personality change because of the assault: he is anxious and has trouble coping with multiple voices.

On May 26, 2009, Cessna filed a Complaint against Lewellen and Dallas alleging that Lewellen and Dallas had intentionally battered him and seeking damages for his personal injuries. On June 29, 2009, a default judgment was entered against Lewellen, which was affirmed by this court on November 29, 2010. *See Lewellen & Dallas v. Cessna*, No. 80A05-1005-CT-330 (Ind. Ct. App. Nov. 29, 2010). On July 26, 2011, a

4

bench trial was conducted. On September 13, 2011, the trial court entered Special

Findings of Fact, Conclusions of Law and Judgment, concluding, in pertinent part, that

> 2. Both [Lewellen and Dallas] committed intentional acts of battery upon Cessna that injured him.
>
> 3. Dallas and Lewellen's intentional acts of battery against Cessna combined for one indivisible injury, namely the physical damages and personal injuries to Cessna.
>
> * * *
>
> 10. Lewellen was contacted by the IU police and gave a statement. Lewellen agreed to call [Dallas] and tape record the statement. In that telephone call he recalled that Dallas said, "Oh, I . . . I only kicked him one time." And he said, "And, it was a good kick though, I broke his nose. I'm sure of that."
>
> 11. Lewellen, in his deposition and at trial, described a discussion in the car after the attack on Cessna where he saw blood on the shoe Dallas had on. The blood was from the kick to Cessna's face. There was a discussion about Cessna's blood on Dallas' shoe.
>
> 12. Dallas denied at trial that he ". . . kicked Cessna in the face . . ." choosing instead to describe a more gentle touching of Cessna with his foot while Cessna was unconscious or nearly unconscious on the ground. That testimony was not credible.
>
> * * *
>
> 20. [Lewellen] pled guilty to battery resulting in serious bodily injury with respect to the beating of [Cessna] in Monroe Circuit Court . . . The [c]ourt finds that the plea of Lewellen was based upon the same evidence as the civil proceeding herein.
>
> 21. [Dallas] pled guilty to disorderly conduct in connection with the beating of [Cessna] . . . The [c]ourt finds that the plea of Dallas was based upon the same evidence as the civil proceeding herein.
>
> * * *

3. That [Lewellen and Dallas] are jointly and severally liable to [Cessna] for damages for intentional acts of battery inflicted upon [Cessna] on the 29th day of September 2007.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that [Cessna] should be and hereby is awarded a JUDGMENT of damages against [Lewellen] and [Dallas], jointly and severally, in the sum of Seventy Five Thousand Dollars ($75,000), plus the costs of this action.

(Appellant's App. pp. 10-12, 15).

Dallas now appeals.[1]  Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Here, the trial court entered special findings of fact and conclusions of law pursuant to Ind. Trial Rule 52(A).  Therefore, our standard of review is two-tiered:  we first determine whether the evidence supports the trial court's findings and second, we determine whether the findings support the judgment.  *Briles v. Wausau Ins. Companies*, 858 N.E.2d 208, 212 (Ind. Ct. App. 2006).  Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and the conclusions which rely upon those findings.  *Id*.  In establishing whether the findings or the judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom.  *Id*.

While conducting our review, we cannot reweigh the evidence or judge the credibility of any witness, and must affirm the trial court's decision if the record contains

---

[1] Lewellen did not appeal the trial court's entry against him.

any supporting evidence or inferences. *Id.* However, while we defer substantially to findings of fact, we do not do so for conclusions of law. *Id.* We evaluate conclusions of law *de novo* and owe no deference to a trial court's determination of such questions. *Id.*

We note that in this case, the trial court adopted Cessna's proposed findings and conclusions *verbatim.* Although wholesale adoption is not prohibited, we do not encourage trial courts to engage in this practice. *See Carpenter v. Carpenter*, 891 N.E.2d 587, 593 (Ind. Ct. App. 2008). We have recognized that "this practice weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court. *Id.* Although we do not apply an altered standard of review when a trial court adopts a party's findings *verbatim*, "near *verbatim* reproductions may appropriately justify cautious appellate scrutiny." *Id.*

## II. *Joint and Several Liability*[2]

Dallas contends that the trial court erred when it imposed joint and several liability following the intentional tort he committed on Cessna. Referencing our supreme court's opinion in *Ind. Dept. of Ins. v. Everhart*, 960 N.E.2d 129 (Ind. 2012), Dallas asserts that the enactment of the Comparative Fault Act abrogated the old rule of joint and several liability in suits to which the Act applies. As such, Dallas requests us to reverse the trial

---

[2] Cessna asserts that Dallas waived his argument on joint and several liability because he failed to raise it during trial. We disagree. In his proposed findings of fact and conclusions of law submitted to the trial court, Dallas requested the trial court to assess fault between the parties, with 45% allocated to Cessna, 55% allocated to Lewellen, and 0% allocated to Dallas. Because counsel elected to forego closing argument at trial and instead chose to submit proposed findings and conclusions, we find that Dallas' argument, contesting the joint and several liability, was properly raised by way of his proposed findings and conclusions, and therefore not waived.

court's judgment against him and to remand for determination of his share of the nominal damages.

Indiana's Comparative Fault Act governs "any action based on fault that is brought to recover damages for injury or death to a person or harm to property." Ind. Code § 34-51-2-1. At common law, joint tortfeasors were jointly and severally liable for the indivisible harm they caused a plaintiff. *Hoesel v. Cain*, 53 N.E.2d 165 (Ind. 1944). A plaintiff could sue any of the joint tortfeasors and recover damages in the amount of the entire harm even though another joint tortfeasor had a hand in the injury. *Id.* at 170-71. The Comparative Fault Act changed this landscape when it abrogated the common law rule by requiring the jury to allocate a percentage of responsibility for the plaintiff's injuries to each defendant and any nonparty who contributed to those injuries and each defendant need only pay his proportional share. I.C. § 34-51-2-7; -8. Although the purpose behind the comparative fault theory is to ameliorate the harsh effects of the common law theory of contributory negligence, the Act applies even in cases of intentional torts. *Coffman v. Rohrman*, 811 N.E.2d 868, 872 (Ind. Ct. App. 2004). "In the case of intentional torts, the Act does not affect a defendant's *liability* but operates to decrease the amount of damages a plaintiff recovers if he has not appropriately mitigated his *damages*." *Id.* As such, in intentional torts originating in a crime, the Comparative Fault Act explicitly provides that:

> In the case of an intentional tort, the plaintiff may recover one hundred percent (100%) of the compensatory damages in a civil action for intentional tort from a defendant who was convicted after a prosecution based on the same evidence.

I.C. § 34-51-2-10.

Here, the trial court used the same evidence to find Dallas civilly liable for Cessna's damages as the State presented to prosecute and convict Dallas for Cessna's assault. Dallas pled guilty to disorderly conduct, a Class B misdemeanor. In order to convict Dallas of this misdemeanor, the State was required to prove beyond a reasonable doubt that Dallas intentionally engaged in fighting. *See* I.C. § 35-45-1-3(a). During the civil proceedings in the instant cause, the detective investigating Cessna's assault in the criminal case testified that as a result of Dallas beating Cessna on the night of September 28, 2007, a criminal charge was filed against him. Dallas admitted that he was charged with a misdemeanor resulting from the fight with Cessna. He told the court that he did not know until 2009, when he was pulled over for speeding, that he had been charged with a criminal act for "this incident involving [Cessna]." (Tr. p. 63). Even though Dallas pled guilty, the record reflects that the same evidence used in his prosecution and plea agreement was also presented at trial during the civil proceeding. Consequently, Dallas may be held liable for 100% of Cessna's damages.

Nevertheless, in support of his argument that he only should be held liable for the damages specifically caused by him, Dallas now directs this court's attention to our supreme court's recent opinion in *Ind. Dept. of Ins. v. Everhart*, 960 N.E.2d 129 (Ind. 2012). Dallas contends that in *Everhart*, our supreme court interpreted the Comparative Fault Act as abrogating the old rule of joint and several liability in suits to which the Act applies. While we agree that the Act changed the old common law rule of joint and several liability, this abrogation only relates to liability grounded in negligence.

9

A leading effect of the Act was to abolish the rules that contributory negligence constituted a complete bar to recovery *in most suits for negligence*. Instead, the Act requires a jury to allocate a percentage of responsibility for the plaintiff's injures to each defendant and any nonparty who contributed to those injuries, and each defendant need only pay his proportional share. In exchange for giving *negligent* plaintiffs greater access to the courts, however, the Act abrogates the old rule of joint and several liability in suits to which the Act applies.

*Everhart*, 960 N.E.2d at 138 (emphasis added). In a related vein, we noted in *Becker v. Fisher*, 852 N.E.2d 46, 49 (Ind. Ct. App. 2006), that a jury instruction by which the jury is instructed to assign percentages of liability, as proclaimed by *Everhart*, "is irrelevant to intentional tort cases."

It is well settled that in examining a statutory provision, we look at the statute as a whole and give common and ordinary meaning to the words employed. *Palmer v. Comprehensive Neurologic Services, P.C.*, 864 N.E.2d 1093, 1098 (Ind. Ct. App. 2007), *trans. denied*. Our legislature does not intend by a statute to make any change in the common law beyond what it declares either in express terms or by unmistakable implication. *Id*. As a statute in derogation of the existing common law, the Act must be strictly construed. *Id*.

The Act clearly stipulates that Cessna may recover one hundred percent of his damages for the intentional tort from Dallas, as Dallas pled guilty after a prosecution based on the same evidence used in the civil proceedings. *See* I.C. § 34-51-2-10. Because both Dallas and Lewellen were involved in the battery on Cessna and both were held liable after a criminal prosecution based on the same evidence, the imposition of

joint and several liability for Cessna's damages complies with the statutory requirement of I.C. § 34-51-2-10. Therefore, we affirm the trial court.

### III. *Proximate Cause*

Additionally, Dallas contends that the trial court erred when it found that Dallas' touching of Cessna proximately caused Cessna's head and facial injuries. Although the trial court explicitly included in its findings that Dallas' trial testimony describing "a more gentle touching of Cessna with his foot" was not credible, Dallas now urges us to adopt the incredible dubiosity rule in civil proceedings by pointing out that "Lewellen's testimony is full of inconsistencies motivated by his own self-interests." (Appellant's Br. p. 22).

Within the narrow confines of the incredible dubiosity rule, a court may impinge upon a jury's function to judge the credibility of a witness. *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's *conviction* may be reversed. *Id*. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *Id*.

The incredible dubiosity rule represents an exception to the general prohibition against reweighing a witness' testimony in *criminal* proceedings and its application is extremely limited and sporadic. In this light—and even discounting the disparity in burden of proof between criminal and civil proceedings—we decline Dallas' invitation to extend the applicability of the rule to civil proceedings. Therefore, because Dallas'

11

argument amounts to a reweighing of witness credibility, we refrain from addressing his argument.

CONCLUSION

Based on the foregoing, we conclude that the trial court properly imposed joint and several liability. We will not address Dallas' argument on proximate cause as it amounts to a reweighing of a witness' credibility.

Affirmed.

NAJAM, J. and DARDEN, J. concur