**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**ROBERT E. SAINT, ESQ.**
Emswiller, Williams, Noland
  & Clarke, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**DEBORAH FARMER SMITH**
Campbell Kyle Proffitt LLP
Carmel, Indiana

FILED

Nov 29 2012, 9:44 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| H. WAYNE BURNETT, M.D., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No.  29A02-1203-DR-180 |
| | ) | |
| PAMELA A. BURNETT, M.D., | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable William J. Hughes, Judge
Cause No. 29D03-0909-DR-1207

**November 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

The marriage of Appellant-Petitioner H. Wayne Burnett, M.D. ("Husband") and Appellee-Respondent-Cross-Appellant Pamela A. Burnett, M.D. ("Wife") was dissolved on February 7, 2012. Husband now appeals the valuation of his partnership interest in a medical practice and the award of expert witness fees to Wife. Wife cross-appeals the division of the marital assets. We affirm.

**Issues**

Husband presents three issues for our review, which we consolidate and restate as the following two issues:

I.      Whether the trial court abused its discretion in determining the value of Husband's partnership interest in a medical practice; and

II.    Whether the trial court abused its discretion in awarding expert witness fees to Wife.

Wife presents a single issue on cross appeal:

I.      Whether the trial court abused its discretion when it deviated from the statutory presumption of equal division of the marital estate.

**Facts and Procedural History**

Husband and Wife were married on June 25, 1985, and two children were born of the marriage. Husband and Wife separated on September 28, 2009, and Wife petitioned to dissolve the marriage on the same day. On October 6, 2011, Wife filed a request for findings of fact and conclusions of law. On October 11 and 12, 2011, the trial court held a final dissolution hearing. On February 7, 2012, trial court entered findings of fact and conclusions of law, and dissolved the marriage. In its dissolution order, the trial court provided for an

2

equal division of the marital estate, except it provided that Husband and Wife each should receive his or her interest in Kentucky real estate which each had received from family by gift or inheritance. (Appellant's App. at 74.)

**Discussion and Decision**

The trial court's order includes findings of fact and conclusions of law pursuant to Indiana Trial Rule 52, therefore we must determine whether the evidence supports the findings and whether the findings support the judgment. Mayer v. BMR Props., LLC, 830 N.E.2d 971, 978 (Ind. Ct. App. 2005). Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and conclusions which rely upon those findings. Dallas v. Cessna, 968 N.E.2d 291, 296 (Ind. Ct. App. 2012).

In establishing whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. Id. We neither reweigh the evidence nor judge the credibility of witnesses, and we will affirm the trial court's decision if the record contains any supporting evidence or inferences. Id. While we defer substantially to findings of fact, we evaluate the trial court's conclusions of law de novo. Id.

<u>Valuation of Husband's Partnership Interest in a Medical Practice</u>

Husband raises two issues concerning the expert testimony and report of R. James Alerding ("Alerding"), which we restate as the single issue of whether the trial court failed to separate Husband's personal goodwill from the enterprise goodwill inherent in Anesthesia

3

Consultants of Indianapolis, LLC ("ACI") while valuing Husband's partnership interest in ACI, and thus abused its discretion.

A trial court has broad discretion in ascertaining the value of property in a dissolution action, and its valuation will not be disturbed absent an abuse of that discretion. Frazier v. Frazier, 737 N.E.2d 1220, 1225 (Ind. Ct. App. 2000). The trial court has not abused its discretion if its decision is supported by sufficient evidence and reasonable inferences therefrom. Id. We do not substitute our judgment for that of the trial court even where the circumstances would support a different award. Id.

> The law regarding valuation of a business that is part of a marital estate is well settled:
>
> [T]he trial court must consider whether goodwill included within the total value of a business enterprise is personal to one spouse. Yoon v. Yoon, 711 N.E.2d 1265, 1269 (Ind. 1999). Goodwill is the value of a business or practice that exceeds the combined value of the net assets used in the business. Id. at 1268. Enterprise goodwill is based on the intangible, but generally marketable, existence in a business of established relations with employees, customers and suppliers, and may include a business location, its name recognition and its business reputation. Id. Goodwill that is attributable to the business enterprise is divisible property, while goodwill that is personal, a surrogate for the owner's future earning capacity, is not divisible. Id. Stated alternatively, goodwill that is based on the personal attributes of the individual is excluded from the marital estate.

Id. In calculating the value of a business that is part of a marital estate, the court must separate personal goodwill from enterprise goodwill. Enterprise goodwill inheres in the business, is independent of any single individual's personal efforts, and will outlast any person's involvement in the business. Yoon, 711 N.E.2d at 1268-69. To the extent a business has goodwill, quantified as value in excess of its net assets, it is a factual issue to what extent, if any, that goodwill is personal to an individual and to what extent it is

4

enterprise goodwill and therefore divisible property. Id. at 1270. It is possible for some of the value of enhanced gross revenue to inhere in the business, even if it was generated by an individual's personal effort. Id. at 1271. The trial court must identify the portion of the value that is attributable to the business without the professional's continued participation when calculating the value of a business that is part of a marital estate. Id. at 1272. To the extent a part of the value of the business is attributable to factors unique to an individual, such as unusually long hours, any enterprise value is only whatever value exists in the patient base, and would be transferrable to a buyer unwilling to work the same long hours. Id.

Here, Alerding testified that his method of calculating the value of Husband's interest in ACI excluded Husband's personal goodwill, and left only ACI's enterprise goodwill. He further testified that his calculated value of Husband's interest in ACI "could assume a sale of the practice, it could assume a sale of his interest, it could assume he stays or leaves[.]" He calculated that, before a discount for lack of marketability, Husband's interest in ACI was worth $337,000, and after the discount, it was worth $253,000. Furthermore, the trial court entered extensive findings of fact and conclusions of law addressing the value of Husband's interest in ACI:

> 43. Mr. Alerding expressed his opinion of the value of Husband's interest in ACI as $337,00[0].00, on an investment value basis, and $253,000.00, on a fair market value basis. . . . Each partner who left received $100.00 plus a "termination benefit[.]" . . . Thirty-two (32) partners have joined ACI since 2001; each has paid $100.00 to become a partner.
> 44. Husband is one of 68 partners in ACI. This number has not changed significantly since the date of filing.
> . . .
> 47. The value for each member's interest in ACI, as initially established by ACI, is $100.00. ACI has never re-determined a value after the determination of the initial

5

value.

48. Each partner in ACI holds an equal ownership interest; each partner's ownership interest is 100%, divided by the number of partners. However, according to ACI's Operating Agreement, each partner does not receive an equal share of ACI's income. Instead, each partner receives unequal partnership distributions pursuant to a formula.

49. Each ACI partner is required to execute a Partner Compensation Agreement ("PCA"). Each PCA is identical, except for identifying information specific to the individual member. . . .

57. ACI is a large practice. It has formalized organization structures and systems. In their PCAs, all its partners have executed covenants not to compete with ACI in the event of their dissociation from ACI. Although each partner is compensated based on the partner's production, ACI's ability to generate revenue is not heavily dependent on the personal services performed by any one partner. ACI's name does not include the name of any partner, and its identity has remained the same for a decade despite the addition and withdrawal of partners. Contracts between ACI and the facilities at which it provides services are owned by ACI and not by any individual partner. None of ACI's contracts with any facility where it provides services requires that Husband, or any individual partner, be available to provide anesthesia services. . . . ACI alone determines what partner will provide services in each operating room and at each facility; no facility controls what partners will provide services there and no partner controls where he/she will provide services. Husband's ability to provide anesthesia services at ACI facilities is not dependent on his personal relationship with any patients or with any surgeons. Even if Husband were not on the requested list of any surgeon, he would still be scheduled to work full-time so long as he is available to work full-time. If Husband were not a partner in a large practice, which had exclusive contracts to provide anesthesia services at multiple facilities, Husband would have to obtain and schedule work, bill, and collect for it. This would occupy time for which he would not produce billable ASUs. [ASUs, also known as ASAs, are billing units for anesthesiologists, similar to billable hours for attorneys.]

. . .

59. The American Society of Anesthesiologists is a trade association of anesthesiologists. It has created and published billing standards for the provision of anesthesia services which are widely used and generally accepted among the national community of anesthesiologists. Pursuant to its billing standards, anesthesia services are recorded and billed based on ASA units or ASUs. . . .

60. ACI compensates its partners based on ASUs[.] . . .

61. The Medical Group Management Association is a trade association. It compiles and publishes data relating to the management of health care entities. Beginning in 2009, MGMA has complied and published statistics regarding the number of ASA units billed annually by anesthesiologists. Such statistics are published in percentile increments, so that it is possible to discern how the number of

6

ASA units billed by an individual anesthesiologist compares to the production of other anesthesiologists. . . . For each of . . . [2009 and 2010], Husband has produced ASA units slightly below the 90th percentile but above the 75th percentile. . . .

62. Husband's earnings in 2009 exceeded the compensation reported by the MGMA for anesthesiologists at the 90th percentile in the United States even though Husband's 2009 ASA units were slightly below the 90th percentile as reported by the MGMA. It is this difference in actual earnings [o]f Husband when compared to industry standards that was used as excess earnings to capitalize under the methodology of valuation employed by Mr. Alerding.

. . .

5. Mr. Alerding[] . . . [is an] expert[] in the field of business valuation, and therefore entitled to offer opinion testimony on or related to the issue of the value of Husband's interest in ACI. [He] has extensive experience and education in the field of business valuation. Mr. Alerding employed reliable scientific principles in performing his assignment. He did so using methodology commonly accepted in the accounting field. [He] holds multiple certifications in the area of business valuation. The testimony . . . has assisted the Court in understanding the evidence and in determining a fact in issue.

. . .

8. The Court is required to identify, and to include in the marital estate subject to division, the tangible and intangible value of Husband's interest in ACI. The intangible value to be included is required to include Husband's enterprise goodwill and to exclude Husband's personal goodwill. . . .

13. By virtue of its existing and long-standing arrangements with multiple facilities to provide anesthesia services, and also by virtue of the covenants not to compete signed by all 68 partners, ACI will continue to have value even if Husband no longer participates. This is indicative of enterprise goodwill. . . .

14. Mr. Alerding's capitalization of Husband's excess earnings, by calculating only Husband's earnings which exceed the earnings of anesthesiologists in the United States who bill a similar number of ASUs as Husband does as reported by the MGMA, properly eliminated Husband's personal goodwill from the calculation. . . .

16. The Court may adopt as its value, any value which is within the range of competent evidence presented to the Court. The range of competent evidence as to the value of Husband's interest in ACI, including enterprise goodwill but not personal goodwill, is from $253,000.00 to $337,000.00. The value determined by the Court, $253,000.00, is within this range of values.

(Appellant's App. at 41-67.) The evidence clearly supports the trial court's determination

that the value of Husband's interest in ACI, excluding Husband's personal goodwill, was

$253,000. Therefore, the trial court did not abuse its discretion in reaching its decision.

Husband argues that this case is similar to Frazier, in which we remanded the case to the trial court for a determination of value, excluding personal goodwill, when we were unable to determine from the trial court's findings and conclusions whether any portion of the aggregate value was attributable to personal goodwill. 737 N.E.2d at 1225. However, here we have no such problem: we are clearly able to determine from the trial court's findings and conclusions what portion of the aggregate value given by Alerding was attributable to Husband's personal goodwill, that is, none. Alerding's method of calculating the value of Husband's interest in ACI excluded Husband's personal goodwill, and left only ACI's enterprise goodwill.[1]

To the extent Husband requests that we reweigh the evidence or reassess the credibility of a witness, we decline to do so. Frazier, 737 N.E.2d at 1223-25. We affirm as not clearly erroneous the trial court's determination of the value of Husband's divisible interest in ACI.

### Expert Witness Fees

Husband contends that the trial court abused its discretion in allowing a fee award to Alerding without evidence to support the reasonableness of the "extraordinary fee." (Appellant's Reply Br. at 13.) However, failure to raise an issue before the trial court waives that issue on appeal. Salsbery Pork Producers, Inc. v. Booth, 967 N.E.2d 1, 3 (Ind. Ct. App. 2012).

---

[1] We recognize that Husband raises an argument alleging violation of Indiana Trial Rule 702 based on the inclusion of an improper factor under Yoon. However, it is essentially the same as his previous argument on this issue, which we have already addressed.

Here, Alerding testified as to his fees, and Husband neither objected to nor cross-examined him regarding the amount of or basis for the fees. In addition, a review of the trial record discloses no document or filing that could be construed as raising the issue. Having failed to raise the issue of Wife's expert witness fees before the trial court, Husband has waived that issue on appeal. Id.

Deviation from Presumptive Equal Distribution

Wife contends that the trial court abused its discretion in awarding more than half of the marital estate to Husband. She does not challenge the evidence, and concedes that the evidence supports the trial court's findings of fact. (Appellee's Br. at 19.) Instead, she asserts that the findings of fact fail to support the trial court's conclusion of law deciding to deviate from the presumptive equal division of the marital estate. She claims that the trial court's findings fail to justify its conclusion that Husband and Wife are each entitled to retain the value of the interest each received in land in Kentucky by way of gift or inheritance from their families. The crux of her argument is that the trial court considered only the source of the property in question,[2] and failed to give equal weight to evidence of the other statutory factors.

The law regarding deviation from an equal division of a marital estate is well settled:

The division of marital assets lies within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. When a party challenges the trial court's division of marital property, [s]he must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal. We may not reweigh the evidence or assess the credibility of the witnesses, and we will consider

---

[2] See Ind. Code § 31-15-7-5(2)(B).

9

only the evidence most favorable to the trial court's disposition of the marital property. Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court.

Hartley v. Hartley, 862 N.E.2d 274, 285 (Ind. Ct. App. 2007) (quoting DeSalle v. Gentry, 818 N.E.2d 40, 44 (Ind. Ct. App. 2004)). Under Indiana Code Section 31-15-7-5, the court is to "presume that an equal division of the marital property between the parties is just and reasonable." Ind. Code § 31-15-7-5. A party may rebut this presumption with relevant evidence that an equal division would not be just and reasonable. Id. If the trial court determines that a party opposing an equal division has met his or her burden under the statute, the court must state in its findings and judgment its reasons for deviating from the presumption of an equal division. Hartley, 862 N.E.2d at 285. The trial court must consider all of the statutory factors, rather than focusing on just one factor, but need not explicitly address all of the factors in every case. Eye v. Eye, 849 N.E.2d 698, 701-02 (Ind. Ct. App. 2006).

Here, the trial court entered extensive findings of fact and conclusions of law addressing the division of the property:

> 21. Each party made reasonable contributions to the acquisition of assets according to his or her talents and roles within the parties' relationship. Husband's income-producing contributions exceeded Wife's, and Wife's non-income producing contributions exceeded Husband's.
> 22. Husband is entitled to a modest deviation from the presumptive equal division of the marital estate based on I.C. § 31-15-17-5(2), because Husband inherited an ownership interest in farmland in Kentucky. Wife is entitled to a[] modest deviation from the presumptive equal division of the marital estate based on [§] 31-15-17-5-(2) because Wife inherited a life estate, subject to her father's life estate, in rental property in Kentucky. The value of Husband's inherited interest exceeds the value of Wife's inherited interest. Neither party's inherited property represents a significant percentage of the parties' marital estate.

10

23.     Wife's economic circumstances are substantially weaker than those of the Husband as [of] the time the division of the marital estate is to become effective. Even though her circumstances are not as good as Husband[']s she leaves this marriage in substantial financial health receiving a net distribution in excess of 2.2 Million dollars with very little debt. . . .

26.     Each party engaged in spending which furthered that party's interests as opposed to the joint marital enterprise. Neither party's spending choices were excessive in the context of a marital net worth of over Four Million Dollars and in the context of the parties' annual income. Neither party has established dissipation by the other party.

27.     Wife's earnings and earning ability are not as good as Husband's, and it is not anticipated that Wife's earning ability will ever equal Husband's earning ability.

28.     Considering the foregoing findings and conclusion regarding a deviation from the equal division of the marital estate, the Court concludes that neither party is entitled to a deviation from the presumptive equal division of the marital estate[,] . . . except that each of the parties should retain the value of the interest he or she received in the land in Kentucky by way of gift or inheritance from their families.

(Appellant's App. at 68-70.) Furthermore, the trial court acknowledged in its findings of fact and conclusions of law that it was "required to consider all factors enumerated in I.C. [§] 31-15-7-5, and to refrain from giving special weight to any one factor." (Appellant's App. at 67.)

The trial court's findings of fact and conclusions of law clearly disclose that the court considered all of the statutory factors required by Indiana Code section 31-15-7-5, and determined that the factors in favor of an unequal division of property outweighed the factors supporting an equal division. "Balancing these statutory factors and the evidence related to them is the essence of the trial court's work in crafting a just and reasonable property division." Gaskell v. Gaskell, 900 N.E.2d 13, 20 (Ind. Ct. App. 2009). As such, the trial court did not abuse its discretion, and we decline Wife's invitation to reweigh the evidence or substitute our discretion for that of the trial court. Id. Therefore, we affirm as not clearly

11

erroneous the trial court's unequal division of the marital estate.

## Conclusion

The trial court's determination of the value of Husband's divisible interest in ACI and unequal division of the marital estate were not clearly erroneous. Husband has waived his ability to appeal the issue of the propriety of Wife's expert witness fees.

Affirmed.

RILEY, J., and CRONE, J., concur.