# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 12 2018, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Aaron E. Haith
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| CHINS: | June 12, 2018 |
| | Court of Appeals Case No. 32A01-1711-JC-2570 |
| D.F., *Appellant,* | Appeal from the Hendricks Superior Court |
| v. | The Honorable Karen M. Love, Judge |
| Indiana Department of Child Services, *Appellee.* | Trial Court Cause Nos. 32D03-1701-JC-2 32D03-1701-JC-3 |

**Pyle, Judge.**

# Statement of the Case

D.F. ("Mother") appeals the trial court's order adjudicating S.J. and N.J. to be Children in Need of Services ("CHINS"). Mother specifically argues that there is insufficient evidence to support the adjudication. Concluding that the Indiana Department of Child Services ("DCS") presented sufficient evidence to support the CHINS adjudication, we affirm the trial court.

We affirm.

# Issue

> Whether there is sufficient evidence to support the CHINS adjudication.

# Facts

The evidence most favorable to the CHINS adjudication reveals that Mother is the parent of M.J., who was born in January 1999; S.J., who was born in January 2001; and N.J., who was born in May 2002. The three children are biological brothers who Mother adopted when they were toddlers. Mother is the children's biological great-aunt, and the children called her Aunt. D.

In the early morning hours of December 29, 2016, M.J. was awakened by Mother screaming and yelling that he had not washed the dishes the previous night. Mother told M.J. that she would no longer pay his high school expenses. M.J. told Mother that if she woke him again in a similar manner, he would punch her in the face. Mother responded that "she was gonna . . . buy guns and

try to kill all three [brothers]." (Tr. Vol. 1 at 103). After Mother had left for work, M.J. washed the dishes and cleaned the house.

[5] Mother returned home from work that evening and telephoned the Avon Police Department to report that her sons had threatened her that morning. Officer Adam Barnhart ("Officer Barnhart") was dispatched to Mother's house. He had previously been dispatched to Mother's house several times for domestic disputes reported by Mother. Each time he had arrived, the three young men had been calm and respectful to him. Officer Barnhart, who also works as a resource officer at Avon High School, had known the three young men to be respectful to him and others at school as well.

[6] When Officer Barnhart arrived at Mother's home on the evening of December 29, Mother told him that her sons were no longer welcome at her house and that she wanted them to leave. However, she had no suggestions as to where they could stay. M.J. suggested that the young men could stay with their football coach and his wife. Officer Barnhart contacted the coach's wife, who said that the three young men were welcome in the coach's home. As the young men were leaving Mother's home, she told them to give her their cell phones. Officer Barnhart took the young men to their coach's house and told the coach to contact Mother within a few days to see if the young men were able to return home.

[7] In early January 2017, Officer Barnhart returned to Mother's house and learned that Mother had contacted DCS and was still refusing to allow her sons to

return home. DCS Caseworker Laveta Carney ("Caseworker Carney") also visited Mother that same day and asked her why her sons could not return home. Mother simply said that the young men were no longer welcome in her home. She also did not want them staying at their coach's house. Instead, she wanted them to leave Avon and be sent to Texas to live with their biological father's relatives. Mother warned Caseworker Carney to take a law enforcement officer with her when she went to speak with her sons because the young men were aggressive. However, when Caseworker Carney arrived at the coach's home to speak with the young men, they were all very polite.

[8] Two days later, DCS filed petitions alleging that M.J., S.J., and N.J. were CHINS. The trial court held a hearing on the petitions in April 2017. At that time, M.J. had turned eighteen and had been dismissed from the case. The hearing proceeded on the status of S.J. and N.J.

[9] Testimony at the hearing revealed that S.J. had previously overheard Mother tell her sister to bring over a gun because she was going to kill everyone. S.J. testified that he frequently came home from football workouts to find no food in the home and that Mother had told him that he was on his own. N.J. testified that Mother had withheld food as punishment and had tried to break his computer by throwing it across the room. N.J. had also returned home to find the front door locked. He had spent the night in a car without food and had drunk water from the hose attached to the side of the house. According to N.J., Mother's home was "not a safe environment, [she was] always yelling, cussing or fighting." (Tr. Vol. 1 at 182). Mother had told both young men that

they would not be successful and she had failed to show them any affection or love.

[10] In addition, DCS Family Case Manager Chyane Hone ("Case Manager Hone") testified that she had offered services, such as individual and family counseling, to Mother to reunify her with her sons. However, Mother had told Case Manager Hone that she did not want her sons to return to her home and that she would not participate in any services. The young men were both participating in individual therapy, and the football coach and his wife were attending services as recommended by the young men's therapist. At the time of the hearing, Mother had not seen her sons since they had left her home in December 2016.

[11] Following the hearing, the trial court issued a detailed nineteen-page order that included one hundred and thirty-one findings and concluded as follows:

> DCS has proven, by a preponderance of the evidence, that [S.J.] and [N.J.]'s physical and mental health is seriously endangered because of Mother's refusal to supply the child[ren] with necessary food, shelter, and supervision and counseling. DCS proved by a preponderance of the evidence, that the coercive intervention of the Court is necessary on the date of the fact-finding hearing.

(App. 105). Mother appeals the trial court's adjudication that her sons are CHINS.

# Decision

[12] Mother argues that there is insufficient evidence to support the CHINS adjudication. When determining whether there is sufficient evidence to support a CHINS determination, we consider only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom. *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). This Court will not reweigh the evidence or reassess the credibility of the witnesses. *Id.* at 1286. Where, as here, a juvenile court's order contains specific findings of fact and conclusions of law, we engage in a two-tiered review. *In re A.G.*, 6 N.E.3d 952, 957 (Ind. Ct. App. 2014). First, we determine whether the evidence supports the findings, and then, we determine whether the findings support the judgment. *Id.* Findings are clearly erroneous when there are no facts or inferences to be drawn therefrom that support them. *Id.* A judgment is clearly erroneous if the findings do not support the juvenile court's conclusions or the conclusions do not support the resulting judgment. *Id.* We further note that, as a general rule, appellate courts grant latitude and deference to trial courts in family law matters. *Matter of D.P.*, 72 N.E.3d 976, 980 (Ind. Ct. App. 2017). "This deference recognizes a trial court's unique ability to see the witnesses, observe their demeanor, and scrutinize their testimony, as opposed to this court's only being able to review a cold transcript of the record." *Id.*

[13] As a preliminary matter, we note that Mother challenges none of the trial court's findings. As a result, she has waived any argument relating to whether these unchallenged findings are clearly erroneous. *See McMaster v.*

*McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) (explaining that unchallenged trial court findings are accepted as true). We now turn to the substantive issues in this case.

[14] A CHINS proceeding is a civil action. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). Therefore, DCS must prove by a preponderance of the evidence that the child is a CHINS as defined by the juvenile code. *Id.* INDIANA CODE § 31-34-1-1 provides that a child is a CHINS if, before the child becomes eighteen (18) years of age:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with the necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and
> >
> > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[15] A CHINS adjudication focuses on the child's condition rather than the parent's culpability. *In re N.E.*, 919 N.E.2d at 105. The purpose of a CHINS adjudication is to provide proper services for the benefit of the child, not to punish the parent. *Id.* at 106. A CHINS adjudication in no way challenges the general competency of parents to continue relationships with their children. *Id.* at 105.

[16] Here, Mother argues that there is insufficient evidence to support the CHINS adjudication. Specifically, she first argues that the testimony of S.J. and N.J. is incredibly dubious. Within the narrow confines of the incredible dubiosity rule, a court may impinge upon a jury's function to judge the credibility of a witness. *Dallas v. Cessna*, 968 N.E.2d 291, 298 (Ind. Ct. App. 2012). However, the rule does not apply in civil proceedings. *Id.* at 299. Mother's argument therefore fails.

[17] Mother also contends as follows:

> [DCS] failed to prove by a preponderance of the evidence that the children were in need of services as charged. The evidence did not reasonably support a theory that the children's physical or mental condition was either seriously impaired or endangered as a result of [Mother's] inability, refusal or neglect or that the children were not provided ample food, clothing, shelter, medical care, education or supervision. The children needed services which were not offered by DCS to [Mother]. Though the same would have been provided with the aid of DCS and did not require the coercive intervention of the court.

(Mother's Br. 15).

[18] However, Mother has waived appellate review of this issue because she has failed to support it with cogent argument and relevant authority. *See Kentucky Nat'l. Ins. Co. v. Empire Fire and Marine Ins. Co.*, 919 N.E.2d 565, 598 (Ind. Ct. App. 2010) (holding that argument was waived for failure to cite authority or provide cogent argument).

[19] Waiver notwithstanding, we find no error. Our review of the evidence reveals that Mother failed to provide for her son's basic needs of food, shelter, and supervision. She has not allowed them to return home since she kicked them out of her house in December 2016. She has also been emotionally abusive to her children and threatened them with physical abuse, including death. In addition, she has refused to participate in counseling or any other DCS-referred services. This evidence is sufficient to support the CHINS determination.

[20] Affirmed.

Vaidik, C.J., and Barnes, J., concur.