**Donald J. DeSALLE, Appellant–
Respondent,**

v.

**Barbara S. (DeSalle) GENTRY,
Appellee–Petitioner.**

No. 48A02–0305–CV–386.

Court of Appeals of Indiana.

Nov. 22, 2004.

Donald J. DeSalle, Indianapolis, IN, Appellant Pro Se.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, Donald J. DeSalle (DeSalle), appeals the trial court's Order denying his Motion to Correct Error.

We affirm, in part, and reverse, in part.

### ISSUES

DeSalle raises eight issues on appeal, which we consolidate and restate in the following two issues:

1. Whether the credibility of witnesses can be argued on appeal; and

2. Whether the trial court abused its discretion by equally dividing the marital assets.

On cross-appeal, Appellee–Petitioner, Barbara S. Gentry (Gentry), raises one issue, which we restate as follows: whether the trial court retained jurisdiction to enforce its Decree of Dissolution during the pendency of this appeal.

### FACTS AND PROCEDURAL HISTORY

DeSalle and Gentry were married on November 19, 1988, and separated after twelve years, on August 4, 2000. Four days later, on August 8, 2000, Gentry filed a Petition for Dissolution of Marriage, Motion for Provisional Hearing, and Restraining Order. During their marriage, the parties accumulated a large amount of personal property. The main portion of their personal property consisted of the DeSalle Collection, a collection of antique toys, which they promoted at several toy show venues in the eastern continental United States. In order to buy and sell these antique toys, the parties formed DeSalle Promotions, Inc., incorporated in Indiana on March 2, 1992. Gentry was listed as the majority shareholder, with 51% of the stock, while DeSalle held the remaining 49% of the stock.

Immediately prior to Gentry's filing of her petition for dissolution of the marriage, DeSalle removed several truck loads of personal property from the marital residence in Anderson, Indiana. Even during the dissolution proceedings, both parties removed property from their marital residence. Furthermore, the trial court ordered certain toys, owned by the parties, to be sold to satisfy some of the marital debts.

Over several different hearings during the dissolution proceedings, the trial court heard evidence regarding the parties' assets and liabilities. On October 31, 2002, the trial court entered the final decree, dissolving the marriage and dividing the marital assets. Thereafter, on November

26, 2002, DeSalle submitted his Motion to Correct Error and Request for a Hearing, alleging numerous errors in the division of assets. On March 10, 2003, the trial court conducted a hearing on the motion to correct error, and subsequently denied the motion on April 7, 2003.

DeSalle now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

The division of marital assets lies within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *Hendricks v. Hendricks*, 784 N.E.2d 1024, 1027 (Ind.Ct.App. 2003). When a party challenges the trial court's division of marital property, he must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal. *In re Marriage of Bartley*, 712 N.E.2d 537, 542 (Ind.Ct.App.1999). We may not reweigh the evidence or assess the credibility of the witnesses, and we will consider only the evidence most favorable to the trial court's disposition of the marital property. *Hendricks*, 784 N.E.2d at 1027. Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id.*

### II. Credibility of Witnesses[1]

DeSalle first contends that several witnesses' testimony lacked credibility. Specifically, he asserts that the trial court erred in considering Gentry's testimony because it was contrary to other witnesses' testimony. One of his multiple references relates to the contradictions between Gentry's testimony and John Garman's (Garman), the court appointed trustee, concerning the possible sale of marital assets. Furthermore, DeSalle not only accuses Gentry of committing perjury, but also of witness tampering. DeSalle additionally focuses his attention on the criminal background of one of Gentry's witnesses to support his argument that the witness's testimony and character lack credibility.

While it is true that some contradictions between the testimony of witnesses appear to exist, the trial court ultimately heard the evidence, observed the witnesses' demeanor while on the witness stand, considered their bias and prejudice, their interest, and their knowledge or lack of knowledge. Therefore, it falls solely within the province of the trial court to determine the witnesses' credibility and to weigh the evidence from their testimony. Consequently, we decline DeSalle's invitation to reweigh the evidence and assess the credibility of the witnesses. *See Hendricks*, 784 N.E.2d at 1027.

### III. Division of Marital Assets

Next, DeSalle maintains that the trial court abused its discretion by equally dividing the marital assets. Besides a general assertion of inequitable distribution, he also claims that the trial court erred in awarding Gentry the toy show venues that were profitable, whereas he was awarded toy show venues that are either unprofitable or no longer in existence. He additionally asserts that the

---

1. We received DeSalle's Motion to Strike False Statements and Fraudulent Accusations and False Documents Submitted in the Brief of Appellee and Cross[-Appellant] and [Cross–Appellant's] Appendix, filed with this court on April 19, 2004. DeSalle's contentions in this motion are essentially identical to his arguments raised in [DeSalle's] Reply Brief/Cross Appellee Brief. We therefore deny the motion and respond to the arguments asserted in his reply brief.

trial court erred by not awarding him part of Gentry's pension.

■ Indiana law requires that marital property be divided in a "just and reasonable manner" and provides for the statutory presumption that "an equal division of the marital property between the parties is just and reasonable." Ind.Code § 31–15–7–4. This presumption may be rebutted, however, by relevant evidence that an equal division would not be just and reasonable. *See id.* Furthermore, in a dissolution action, the trial court has broad discretion in determining the value of the property, and its valuation will only be disturbed for an abuse of discretion. *See Bertholet v. Bertholet,* 725 N.E.2d 487, 497 (Ind.Ct.App.2000).

## A. *Inequitable Division*

At the outset, we note that DeSalle singles out specific items of marital property in support of his general claim of inequitable distribution. Specifically, DeSalle mentions that he was ordered to pay Gentry's American Express credit card. He also asserts that several unspecified marital assets, which are in Gentry's possession, were never taken into account by the trial court in its division of property.

■ Our supreme court has previously stated that the trial court's disposition is to be considered as a whole, not item by item. *Fobar v. Vonderahe,* 771 N.E.2d 57, 59 (Ind.2002). In crafting a just and reasonable property distribution, a trial court is required to balance a number of different considerations in arriving at an ultimate disposition. *Id.* at 60. The trial court may allocate some items of property or debt to one spouse because of its disposition of other items. *Id.* Similarly, the factors identified by the statute as permitting an unequal distribution in favor of one party or the other may cut in different directions. *Id.* As a result, our supreme court concluded that, if the appellate court views any of these in isolation and apart from the total mix, it may upset the balance ultimately struck by the trial court. *Id.*

In its Order, the trial court made the following distribution of marital assets:

I. the [c]ourt concludes and orders that the division of property should be and is hereby divided as follows:

To [Gentry]

1. Her pension and pension rights.

2. The condo in Ft. Myers, Florida, subject to the indebtedness thereon, which she is ordered to pay.

3. The personal property in her possession appraised by Symmes.

4. The DeSalle Promotions, Inc. and all of its stock.

5. The Ferrari automobile, 14 Oak Display Cabinets, Hopalong Trash can, box of Matchbox cars, copy machine, CTX computer and components, [a]irforce Tonka [t]ruck and [b]url [w]alnut [s]ideboard with [m]arble [t]ops now in [DeSalle's] possession.

6. Her Hallmark collection, flow blue dish collection, her Matchbox car collection, her jewelry, Lamoges and [d]ishes, all Stief [b]ears, all baskets, 2 of the quarter scale cars, property in storage and her clothes.

7. The exclusive rights to manufacture the DeSalle Collector Toys and the right to use the name DeSalle collection

To [DeSalle]

1. The real estate located at 5106 Knollwood Lane, Anderson, IN subject to the indebtedness thereon, being a first mortgage, second mortgage, and third line of credit, which [DeSalle] is ordered to pay and hold [Gentry] harmless thereon.

2. The racing equipment surrendered to David Smith to satisfy his judgment.

3. The personal property appraised by Symmes located at the Knollwood Lane home, not earlier given to [Gentry].

4. His jewelry and clothes.

5. The Tonka collection, Smith–Miller collection, Doepke collection and tin toy collection taken by [DeSalle] and not appraised by Symmes.

6. The right to use the DeSalle Collector Guides and 50% of all their royalties.

7. The Don DeSalle Promotions business.

II. The [c]ourt orders that the parties shall pay these additional debts:

[DeSalle] should pay and is ordered to pay: (1) his Master Card debt, (2) parties American Express card debt, (3) the taxes, license fees and expenses of DeSalle Promotions, Inc. from August 2000 until 30 days after the date of this order, (4) $2,330.00 to [Gentry] to reimburse her for an insurance check he cashed, (5) the amount of $3,240.71 to [Gentry] which she paid on the mortgage which [DeSalle] failed to pay causing the mortgage foreclosure to follow, (6) attorney fees for [Gentry's] attorney in the amount of $4,000.00, one half (1/2) due within 60 days of this order and the remainder due within 120 days, (7) $1,772.00 to [Gentry] to equalize the parties payments to [Garman].

(Appellee's App. pp. 34–5).

Specifically with regard to DeSalle's individualized contentions, the trial court made the following findings:

11. The [c]ourt finds that both of the parties removed personal items from the marital residence.

12. The [c]ourt finds that [Gentry] had items of personal property removed from the marital residence in Anderson, IN, and that an accounting was completed on some items removed.

13. The [c]ourt finds that [DeSalle] removed items of personal property from the marital residence and did not account for the items.

14. The [c]ourt finds that [Gentry] and [DeSalle] sold items of personal property with the permission of the [c]ourt to pay various debts.

15. The [c]ourt finds that [DeSalle] after being rewarded the business of DeSalle Promotions, Inc., failed to operate DeSalle Promotions, Inc. with good business judgment. Further, [DeSalle] started the same type of business with a different name of D. DeSalle Promotions, Inc. immediately after being awarded DeSalle Promotions, Inc.

\* \* \*

17. The [c]ourt finds that [DeSalle] violated the restraining order by selling assets of the parties and allowing assets to be encumbered.

\* \* \*

37. The [c]ourt finds that [DeSalle] removed the collection of toys from the DeSalle home including the Tonka, Doepke, Smith Miller and most of the tin toy collections. Accordingly, these items were not appraised for the court to consider and use.

\* \* \*

57. That the property taken by [DeSalle] was never appraised, thus mak-

ing it extremely difficult to divide the parties property evenly.

(Appellee's App. pp. 26B, 29, and 33).

Our review of the record reveals that the trial court gave careful consideration to the various contributions made by both parties to the acquisition of the marital property during their twelve-year marriage. While both parties removed marital property prior to the appraisal, the trial court properly found that DeSalle contributed to the difficulties in equally dividing the property by not presenting the removed items for appraisal. Thus, being mindful that we have to consider the trial court's disposition as a whole, we cannot conclude that the trial court's decision was clearly against the logic and effect of the facts and circumstances before it. *See Fobar*, 771 N.E.2d at 59; *Hendricks*, 784 N.E.2d at 1024. Accordingly, we find that the trial court did not err in dividing the entire marital estate equally between the parties.

### B. *Toy Show Venues*

Next, DeSalle alleges that the trial court abused its discretion by dividing the toy show venues between the parties. Specifically, DeSalle asserts that he was awarded venues that are not profitable or no longer in existence, while Gentry received the more profitable toy show locations. He also contends that he alone represents DeSalle Promotions, Inc., because he is well known in the toy show industry.

On March 2, 1992, Gentry and DeSalle incorporated a for profit corporation, DeSalle Promotions, Inc., for the purpose of buying and selling toys and for the operation of toy shows. Gentry was listed as a majority shareholder with 51% of the stock, while DeSalle held 49% of the stock. Our supreme court has previously held that a business can be part of a marital estate and thus may be subject to division in the dissolution proceedings. *See Yoon v. Yoon*, 711 N.E.2d 1265, 1269 (Ind.1999). In valuing the business, the trial court must consider whether goodwill that is included within the total value of a business enterprise is personal to one spouse. *Id.* In this regard, we distinguish between enterprise goodwill, which is divisible property, and personal goodwill, which is excluded from the marital estate. *Id.* Enterprise goodwill is based on the intangible, but generally marketable, existence in a business of established relations with employees, customers and suppliers, and may include factors such as a business location, its name recognition and its business reputation. *Id.* Ultimately, these factors must, in one way or another, contribute to the anticipated future profitability of the business. *Id.* On the other hand, personal goodwill is goodwill that is based on the personal attributes of the individual. *Id.*

By alleging that only he can represent DeSalle Promotions, Inc., since he is well known in the toy show industry and knows all the dealers, DeSalle characterizes the toy show venues as personal goodwill of the corporation. We disagree. The record shows that Gentry and DeSalle attended the toy shows together and both were known to the dealers and customers. Furthermore, the trial court in its Order found that even though DeSalle was initially awarded DeSalle Promotions, Inc., he failed to operate it with good business judgment.

Moreover, our review of the record reflects that the toy shows were venues where Gentry and DeSalle met with dealers and bought and sold toys. Attendance at the venues contributed to the name recognition of the DeSalle Promotions, Inc., its reputation, and accordingly, its profitability. Based on these elements, we

conclude that toy show venues are part of the enterprise goodwill of a business and therefore, can be divided by the trial court during the dissolution proceedings. *See id.*

However, while the toy show venues are enterprise goodwill and thus can be part of the divisible marital property, they are nevertheless material for DeSalle's continued ability to earn a future income. The absence of a permanent, physical location for the business means that the toy show venues are the sole place where the toys are bought and sold and, consequently, the sole source of DeSalle's income. It is well established that rights in future earnings are not considered marital property and thus not subject to division in a dissolution of marriage proceeding. *See, e.g., Wilcox v. Wilcox,* 173 Ind. App. 661, 365 N.E.2d 792, 795 (1977); *Moore v. Moore,* 482 N.E.2d 1176, 1180 (Ind.Ct.App.1985). Accordingly, we find that the trial court's division of toy show venues effectively resulted in an injunction against DeSalle's future income. Therefore, we hold that the trial court abused its discretion when it divided the toy show venues between the former spouses. *See Hendricks,* 784 N.E.2d at 1027.

### C. *Gentry's Pension*

Lastly, DeSalle disputes the trial court's award of Gentry's pension fund to Gentry. In particular, he maintains that since he worked solely for DeSalle Promotions, Inc., he did not have an established retirement account. Thus, he asserts that the trial court discriminated against him "because he was a house husband who was not given a salary or a retirement account and if he had been a female homemaker who supplied the same duties throughout the marriage, he would have been awarded an equitable portion of the retirement account or would have been compensated for it in the division of assets." (Amended Appellant's Br. p. 17).

Concerning Gentry's pension, the trial court stated in its Order:

43. That [Gentry] is a school teacher and has been in the teachers retirement plan for 29 years at separation. For 12.5 years of [these] 29 years, she was married to [DeSalle]. That the value of her pension was $147,165.00. That all right, title and use of this pension and pension payments are assigned to [Gentry]. During the parties marriage, the value of said pension is $63,281.00.

(Appellee's App. p. 30). In its division, the trial court awarded Gentry her pension and pension rights. Since we already decided that the trial court did not err in its equitable division of marital property, we conclude that DeSalle was compensated with additional items from the marital estate to offset Gentry's award of her pension fund. *See Fobar,* 771 N.E.2d at 59. Accordingly, we find that the trial court did not abuse its discretion.

### IV. *Cross-appeal: Jurisdiction*

Gentry, on cross-appeal, contends that the trial court erred in deciding that it lacked jurisdiction to rule on the enforceability of its Decree of Dissolution while DeSalle's appeal is pending. Specifically, Gentry asserts that under the prior appellate rules trial courts retained jurisdiction to enforce a judgment. Focusing on the revised appellate rules, she maintains that the current language of the rules does not preclude the trial court's continuing jurisdiction to enforce its judgment. However, Gentry also concedes that this issue is moot.

The long-standing rule in Indiana has been that a case is deemed moot when no effective relief can be ren-

dered to the parties before the court. *A.D. v. State,* 736 N.E.2d 1274, 1276 (Ind. Ct.App.2000). When a dispositive issue in a case has been resolved in such a way as to render it unnecessary to decide the question involved, the case will be dismissed. *Id.* The existence of an actual controversy is an essential requisite to appellate jurisdiction. *Bremen Public Schools v. Varab,* 496 N.E.2d 125, 126 (Ind.Ct.App.1986). Although we prefer not to issue advisory opinions, we may decide an arguably moot case on its merits if it involves questions of great public interest. *A.D.,* 736 N.E.2d at 1276. Nevertheless, this public interest exception may only be invoked upon the existence of three elements: the issue concerns a question of great public importance which is likely to recur in a context which will continue to evade review. *Haggerty v. Bloomington Bd. of Public Safety,* 474 N.E.2d 114, 116 (Ind.Ct.App.1985).

The issue here presented on cross-appeal by Gentry does not meet the requirements of the public interest exception. While arguing the merits of the issue, Gentry fails to introduce any evidence establishing this jurisdictional issue to be of great public importance and likely to evade future review. *See id; see also* Ind. Appellate Rule 46(A)(8)(a). Consequently, we decline to address Gentry's cross-appeal.

### CONCLUSION

Based on the foregoing, we find that the trial court properly divided the marital assets between DeSalle and Gentry, with the exception of the division of the toy show venues. Holding that the trial court's division of toy show venues effectively amounted to an injunction against DeSalle's future income, we reverse the trial court's Order, solely with respect to the toy show venues.

Affirmed, in part, and reversed, in part.

NAJAM, J., and KIRSCH, C.J., concur.