**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**DAVID A. LEWIS**
Jeffersonville, Indiana

**A. DAVID HUTSON**
Smith Carpenter Thompson Fondrisi
Cummins & Lewis, LLC
Jeffersonville, Indiana

ATTORNEY FOR APPELLEE:

**KAREN YVONNA RENFRO**
New Albany, Indiana



FILED

Aug 07 2012, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| | ) | |
| DENNIS COFFMAN, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 31A01-1110-DR-488 |
| | ) | |
| JENNIFER COFFMAN, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE HARRISON CIRCUIT COURT
The Honorable Vicki L. Carmichael, Special Judge
Cause No. 31C01-0902-DR-31

**August 7, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Respondent, Dennis Coffman (Dennis), appeals the trial court's disposition of marital property following the dissolution of his marriage to Appellee-Petitioner, Jennifer Coffman (Jennifer).

We affirm in part, reverse in part, and remand with instructions.

ISSUES

Dennis raises four issues on appeal, which we consolidate and restate as the following three issues:

(1) Whether the trial court abused its discretion in excluding certain debts from the marital estate;

(2) Whether the trial court abused its discretion when it failed to take into account Dennis' post-separation payments of an insurance settlement to Jennifer; and

(3) Whether the trial court abused its discretion when it distributed the parties' personal property.

FACTS AND PROCEDURAL HISTORY

Jennifer and Dennis were married on June 30, 2002. They had no children, although Jennifer had children from a prior marriage. After their marriage, Jennifer and Dennis lived on a farm in Harrison County, Indiana, which Dennis had purchased in January of 2002. Initially, the farm consisted of twenty acres with a house and one barn. During their marriage, though, Dennis and Jennifer built a sixty foot round pen, which they used to train horses, another barn for breeding horses, and a 75 ft. by 100 ft. building

that they subsequently leased to Coffman Construction and Excavating, LLC (Coffman Construction). They also purchased an additional 37.5 acres of adjoining land, on which they began raising and training horses.

As of February 9, 2009, the stipulated date of the parties' separation, the real estate, buildings, and improvements were worth a total of $380,000 and the building leased to Coffman Construction generated $1,600 of income per month. However, Dennis had received a loan of $44,657 from his parents for the down payment on the purchase of the farm that he and Jennifer had not yet repaid at the time of the evidentiary hearing. The conditions of that loan provided that Dennis would repay the loan when he could. Dennis financed the remainder of the purchase of the farm with a mortgage through BB&T bank. At the time of Dennis and Jennifer's separation, the balance on that mortgage was $158,214. The parties also took out a second mortgage on the farm in order to finance the construction of the round horse training pen and the building that they thereafter leased to Coffman Construction. At the time of separation, Dennis and Jennifer owed $150,398 on that mortgage. Finally, the parties also received a loan of $14,600 to purchase the additional 37.5 acres. Dennis paid that debt after his separation from Jennifer.

David Coffman, Dennis' father, owned Coffman Construction prior to 1995. In 1995, he sold the company to Dan Christiani (Christiani). In 2000, Dennis and Gary Ottman (Ottman) purchased the company from Christiani. At the time, Christiani owed David Coffman a debt, so Dennis and Ottman agreed to assume joint responsibility for

3

the debt as a term of the purchase of the company. Thereafter, Dennis experienced trouble with his partner and with the business. In 2004, Dennis terminated his partnership with Ottman and had to sell the controlling interest in the company to another construction company, T&C Contracting (T&C). T&C purchased 60% of Coffman Construction, and Dennis became an employee of T&C, earning approximately $2,000 per week. A provision of T&C's purchase was that Dennis would accept sole responsibility for the debt owed to David Coffman, which was $294,887 as of the date of the parties' separation. Dennis repaid the debt out of Coffman Construction funds in monthly $2,500 installments.

Dennis' accountant, Nick Schafer (Schafer) prepared a report of Dennis' financial condition and determined that Dennis' 40% ownership interest in Coffman Construction was worth $52,088 as of the time of the parties' separation. Schafer calculated this figure using Coffman Construction's 2008 tax return, which documented that Coffman Construction had assets of $1,539,212 and liabilities of $1,703,878, with a net value of negative $164,666. Shafer added back the balance of the debt owed by Dennis and arrived at an estimated worth of $130,221. He then calculated forty percent of that number, which was $52,088.

On February 9, 2009, Dennis filed a Petition for Dissolution of Marriage in Clark County. On February 24, 2009, the parties jointly moved to dismiss the dissolution action, but stipulated on the record that February 9, 2009 remained the actual date of physical separation. Two days later, on February 26, 2009, Jennifer filed a Petition for

4

Dissolution of Marriage in Harrison County. The next day, Dennis filed a Counter-Petition for Dissolution of Marriage.

When the parties separated, Jennifer vacated their home and did not take any personal belongings with her. At the time, the parties had $46,819 in multiple joint bank accounts. Dennis closed all of the joint accounts and deposited the money into a separate account in his name only. As a result, Jennifer had a difficult time financially and had to apply for public assistance. At one point Jennifer and Dennis reconciled, but the reconciliation did not last. When Jennifer vacated their home the second time, she took some of their personal property with her, although she left a majority of it in Dennis' possession.

After the separation, a fire damaged one of the barns on the parties' property and destroyed the personal property inside, including a horse trailer worth $94,968. Dennis received an insurance payout of $162,000 for the destroyed property, and he used some of the payout to pay a debt of $80,444 attached to the horse trailer. Dennis also gave some of the money to Jennifer. The trial court did not make a finding as to how much money Dennis gave to Jennifer or how much was still in his possession at the time of the hearing.

On July 22, 2011, the trial court held an evidentiary hearing on Jennifer's petition for the dissolution of her marriage to Dennis. At the hearing, both parties submitted lists of their personal property, along with corresponding value estimates. The parties' lists and testimony did not identify the same personal property and assigned conflicting values

5

to some of the items in common to both lists. In total, Jennifer claimed that their personal property was worth $261,477, while Dennis claimed that their personal property was worth $234,907. Dennis also asserted that a debt he owed his parents for a $62,800 loan they had given him to pay a settlement for his first divorce should be considered a marital debt.

At the close of the evidence, the trial court took the matter under advisement, and then on August 8, 2011, the trial court entered the Decree of Dissolution. In the Decree, the trial court found that the value of the marital estate was $420,294 based on the equity in the residence, cash in the bank, personal property, and Dennis' 40% interest in Coffman Construction. The trial court further found that the debts Dennis owed to his parents were personal, rather than marital in nature. Based on this finding, the trial court awarded Dennis possession of the marital residence, his interest in Coffman Construction, the cash in the bank, and the personal property in his possession. However, the trial court did not find a reason to deviate from the presumption of an equal division of the property, and it awarded Jennifer the personal property in her possession, as well as a judgment of $185,147, payable in $2,000 monthly installments, to equalize the division of the estate. $100,000 of this judgment was to equalize the distribution of the personal property, and $85,147 was to equalize the distribution of the parties' real estate, bank accounts, and business property.

On September 6, 2011, Dennis filed a timely motion to correct error alleging that the trial court had committed prejudicial errors with regards to its valuation of the marital

estate and its finding that Dennis' debts were not marital debts. The trial court did not set the matter for a hearing or rule on the motion. Therefore, on October 21, 2011, it was deemed denied pursuant to Ind. Trial Rule 53.3(A).

Dennis now appeals. Additional facts will be provided as necessary.

## DISCUSSION

Preliminarily, we note that we review a trial court's denial of a motion to correct error for an abuse of discretion. *Evans v. Evans,* 946 N.E.2d 1200, 1204 (Ind. Ct. App. 2011). We will find that a trial court has abused its discretion when its decision is against the logic and effect of the facts and circumstances before it or if the court has misinterpreted the law. *Id.*

### I. *Marital Debt*

Dennis' first claim is that the trial court erroneously excluded his debts to his parents from its calculation of the marital "pot." According to Dennis, this excluded amount totals $402,344 and includes (1) the $294,887 debt that Dennis assumed as part of his agreement with Christiani to purchase Coffman Construction; (2) the $62,800 debt Dennis owes his parents for the loan they gave him to pay the settlement from his first divorce; and (3) the $44,657 he owes his parents for the down payment on the farm.

Ind. Code § 31-15-7-4(a) provides that in an action for dissolution of marriage, the trial court shall divide the property of the parties, regardless of whether it was owned by either spouse before the marriage; acquired by either spouse in his or her own right after the marriage and before the final separation or the parties; or acquired by the parties'

joint efforts. The marital estate includes both assets and liabilities. *Smith v. Smith,* 938 N.E.2d 857, 860 (Ind. Ct. App. 2010). This "one-pot" theory ensures that all assets are subject to the trial court's power to divide and award. *Id.* It is also necessary because, at a minimum, the trial court must be "sufficiently apprised of the approximate[] gross value of the marital estate." *Montgomery v. Faust,* 910 N.E.2d 234, 238 (Ind. Ct. App. 2009) (quoting *Libunao v. Libunao,* 388 N.E.2d 574, 576 (Ind. 1979)). As a result, the trial court has no authority to exclude or set aside marital property, but must divide all property. *Smith,* 938 N.E.2d at 860.

Both parties point us to *Capeheart v. Capeheart,* 705 N.E.2d 533 (Ind. Ct. App. 1999), *trans. denied,* for differing reasons. In *Capeheart,* Craig (Craig) and Lynn (Lynn) Capeheart disputed whether a $23,000 higher education loan debt Craig had incurred prior to their marriage was part of the marital estate for purposes of dividing marital property upon the dissolution of their marriage. *Id.* at 536. The trial court concluded that the debt was not a marital debt because it was incurred prior to the marriage. *Id.* On appeal, we found that the trial court had erred in excluding the debt from the marital pot as debts incurred prior to marriage are part of the marital estate under I.C. § 31-15-7-4(a). *Id.* at 537. Nevertheless, we affirmed the trial court, holding that even though the debt was erroneously excluded, the error was harmless because the trial court's reason for

8

awarding the debt to Craig supported the unequal distribution—specifically, that Craig incurred the debt prior to marriage, and Lynn had not contributed to the debt.[1] *Id.*

Dennis points to *Capeheart* for the proposition that it is error to exclude debts incurred prior to marriage from the marital pot. In response, Jennifer argues that, as in *Capeheart,* the error here was harmless because the trial court had a proper justification for the unequal distribution, even if erroneous. She notes that the trial court gave a reason for assigning responsibility for the debts to Dennis, at least with regards to Dennis' debt of $294,887. The trial court declined to factor that debt into its calculation of Dennis' interest in Coffman Construction, stating that "[Dennis] is collecting rent and is able to pay the mortgage as well as the debt owed to his parents through the business." (Appellant's App. p. 9).

We agree that, as in *Capeheart*, the trial court erred when it excluded the debts incurred prior to the marriage from the marital estate. However, we cannot find that the error here is harmless. While, as Jennifer points out, the trial court might have had

---

[1] I.C. § 31-15-7-5 provides in relevant part that the presumption of equal division of marital property is rebuttable by evidence of the following factors:
  (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
  (2) The extent to which the property was acquired by each spouse:
       (A) before the marriage; or
       (B) through inheritance or gift.
  (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
  (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
  (5) The earnings or earning ability of the parties as related to:
       (A) a final division of property; and
       (B) a final determination of the property rights of the parties.

proper justifications for awarding an unequal distribution, such a distribution in this case would have led to a result that is an improper form of maintenance under common law. Specifically, if the trial court had included the excluded debts into its calculations, the net marital estate would have only been worth $17,950 rather than $420,294, yet the trial court awarded Jennifer an equalization judgment of $185,147.[2] We have previously held that absent a finding of dissipation, a property division cannot exceed the value of the marital assets without being considered an improper form of maintenance and an abuse of discretion. *Smith,* 938 N.E.2d at 861. In this context, we have interpreted "assets" as referring to the net value of the marital estate. *See id.* Thus, regardless of whether the trial court had valid justifications for awarding an unequal distribution, the trial court abused its discretion because its award of $185,147 was significantly higher than the value of the marital estate.

In light of our conclusion that the trial court abused its discretion, we remand to the trial court for a recalculation of the marital estate and a revised disposition of the estate. While we note that it is within the trial court's discretion to assign a portion of the marital debts to Dennis if it finds that the factors listed in I.C. § 31-15-7-5 apply, the trial court must first include all of the marital assets and debts incurred prior to the parties'

---

[2] This amount is calculated by subtracting the total debts of $402,344 from the total assets of $420,294.

separation into the marital "pot" and must ensure that its award is not greater than the net value of the marital estate and does not constitute an improper form of maintenance.[3]

## II. *Insurance Settlement*

Next, Dennis argues that the trial court abused its discretion by failing to credit him for the portion of the insurance proceeds from the barn fire that he paid to Jennifer. At the evidentiary hearing, Dennis testified that he gave Jennifer "about fifty-four thousand plus two horse trailers" after receiving the insurance proceeds. (Tr. p. 65). In the divorce decree, the trial court awarded Dennis the property on which the damaged barn was located and determined that Dennis was "thus entitled to the remaining proceeds from the insurance settlement." (Appellant's App. p. 10). However, the trial court also ordered Dennis to pay Jennifer an equalization payment and did not credit the amount that Dennis claimed he had given Jennifer. Dennis now argues that the trial court is requiring him to pay Jennifer twice because he paid her the original amount and is now also required to pay her the equalization payment.

We agree. The appraised value of the real estate at the time of separation was $308,613, and the insurance proceeds were given, in part, to reimburse Dennis for the decline in property value after the fire. Accordingly, Dennis must also receive the insurance proceeds in order to receive the equity in the property that the trial court awarded based on its calculation of the property's value. Jennifer's equalization payment

---

[3] As we find that the $294,887 was a marital debt and not a business debt of Coffman Construction, we will not address Dennis' alternative argument that the trial court abused its discretion when it declined to account for the debt in its valuation of Coffman Construction.

11

was designed to compensate her for Dennis' award of the property, but as she has already received several thousand dollars from Dennis, she should not also be compensated for that amount through an equalization payment.

Moreover, this was not a harmless error. The total of Dennis' ordered equalization payment was $185,147. An amount of 40,000-55,000 dollars could total one quarter or more of the ordered equalization payment and would significantly deviate from the presumed equal division of the marital property. As the trial court specifically stated that it wished to divide the property equally and did not find any factors supporting a deviation from that conclusion, we conclude that the failure to account for the insurance proceeds was an abuse of discretion.

However, there is a conflict in the evidence with regards to Dennis' payment to Jennifer. He testified that he gave her "*about* fifty-four thousand" dollars plus two horse trailers. (Tr. p. 65) (emphasis added). Jennifer did not dispute that Dennis gave her a portion of the proceeds, but in her description of their marital assets she lists that she received $42,000 of the insurance proceeds and that Dennis received $120,000. As we cannot make a credibility determination on appeal, we order the trial court to determine whether Jennifer received $42,000 or $54,000 of the insurance settlement and to adjust Jennifer's equalization payment accordingly.

### III. *Personal Property*

Finally, Dennis argues that the trial court abused its discretion because it failed to base its valuation of the personal property on sufficient evidence. Both parties submitted

lists of personal property at the evidentiary hearing, as well as their respective estimates of the property's value. The lists contained different items and, for many of the items that were on both of the lists, conflicting valuations of the items. In total, the trial court found that Jennifer estimated that the personal property was worth $261,477, and Dennis estimated that the property was worth $234,907. In response to this conflicting evidence, the trial court concluded that it was

> unable to divide the personal property of the parties, other than to award each [party] possession of all personal property now in his/her possession, including any motor vehicles and animals. However, [Jennifer] is ordered to return all guns to [Dennis] immediately. Using the parties' exhibits, the [c]ourt finds that [Dennis] has the bulk of the personal property in his possession. Equalization can be accomplished by [Jennifer] taking one-half [of] that personal property or [Dennis] paying [Jennifer] the sum of $100,000 and maintaining possession of the property. Due to the conflict between the parties, the [c]ourt orders [Dennis] to pay $100,000 to [Jennifer] and maintain possession of the personal property in his possession.

(Appellant's App. p. 10). Dennis now makes three claims with respect to the trial court's disposition of personal property.

First, he argues that the trial court failed to resolve conflicts in the evidence. We agree that there were many such conflicts. For example, Jennifer listed that the parties owned three cows, and Dennis listed that they owned two. Jennifer listed that Dennis had a banjo and guitar collection that included a guitar worth $10,000 and a banjo worth $6,000, while Dennis testified that the expensive banjo was "gone a long time ago" and that the only banjo he had was worth $500-$600. (Tr. p. 68). Because the trial court told the parties to "generalize" their presentation of evidence with respect to personal

13

property, Dennis claims that he did not invite any resulting miscalculations of personal property and that any fault rests with the trial court.

Dennis' second argument is that the trial court failed to correctly ascertain the value of the property, because it did not correctly identify the parties' aggregate valuations of the property. According to Dennis, he actually valued the property at $154,463 because the trial court failed to take into account the $80,444 debt on the four-horse trailer. He also states that Jennifer actually valued the property at $352,977 because the trial court failed to account for four horses and five vehicles cumulatively valued at $91,500 that Jennifer had listed in a separate Exhibit.

Finally, Dennis argues that there was no connection between the trial court's ultimate valuation of $250,000 and the evidence, as it seemed like the trial court did not resolve the conflicts in the evidence and add up the totals, but instead averaged the two parties' separate valuations.

We will not address each of these arguments separately because we conclude that they each suffer from the same flaw—neither party had the property independently appraised. It is well-settled that in a dissolution hearing, the burden of producing evidence as to the value of marital property is on the parties and their attorneys. *Galloway v. Galloway,* 855 N.E.2d 302 (Ind. Ct. App. 2006). As Jennifer points out, we previously stated in *Hurst v. Hurst,* 676 N.E.2d 413, 416 (Ind. Ct. App. 1997) that if a party wishes the trial court to "painstakingly identify and distribute every item of

14

personal property owned by the parties," that party should "provid[e] the trial court with a complete list and appraisal of the personal property."

Instead, we conclude that the trial court acted within its discretion when it assigned the personal property the value of $250,000, in spite of the fact that $250,000 is not an exact summation of the individual items. Our supreme court has previously stated that the trial court's disposition is to be considered as a whole, not item by item. *DeSalle v. Gentry,* 818 N.E.2d 40, 45 (Ind. Ct. App. 2004). In crafting a just and reasonable property distribution, a trial court is required to balance a number of different considerations. *Id.* If we view any of these distributions in isolation and apart from the total mix, it may upset the balance ultimately struck by the trial court. *Id.* As a result, we have held that "[i]f the trial court's chosen valuation is within the range of values supported by the evidence, the trial court does not abuse its discretion." *Balicki v. Balicki,* 837 N.E.2d 532, 536 (Ind. Ct. App. 2005), *trans. denied.*

Here, the range of the parties' valuations was $234,907 to $261,477. $250,000 is within that range. Even if we accept that the parties' valuations were instead $154,463 and $352,977, as Dennis argues, $250,000 was still an appropriate determination. Also, with respect to Dennis' first claim, we conclude that the trial court did inherently resolve conflicts in the evidence when it declined to accept either party's exact valuation. Instead, it approximated the average of their valuations in an attempt to reconcile the conflicts. We cannot find that the trial court abused its discretion in this regard,

15

especially in light of the parties' failure to obtain an appraisal of the property. Therefore, we conclude that the trial court's valuation of $250,000 was appropriate.

CONCLUSION

Based on the foregoing, we conclude that: (1) the trial court abused its discretion in excluding the debts resulting from the loans from Dennis' parents from the marital estate; (2) the trial court abused its discretion when it failed to take into account Dennis' post-separation payments of an insurance settlement to Jennifer; and (3) the trial court did not abuse its discretion when it distributed the parties' personal property.

Affirmed in part, reversed in part, and remanded with instructions.

NAJAM, J. and DARDEN, S. J. concur