**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 22 2014, 10:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TIMOTHY J. VRANA**
Timothy J. Vrana LLC
Columbus, Indiana

ATTORNEY FOR APPELLEE:

**SEAN G. THOMASSON**
Thomasson Thomasson Long & Guthrie, PC
Columbus, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LARRY POWELL, | ) | |
| | ) | |
| Appellant/Respondent, | ) | |
| | ) | |
| vs. | ) | No. 03A04-1308-DR-399 |
| | ) | |
| VANESSA POWELL, | ) | |
| | ) | |
| Appellee/Petitioner. | ) | |

APPEAL FROM THE BARTHOLOMEW SUPERIOR COURT
The Honorable Kathleen Tighe Coriden, Judge
Cause No. 03D02-1211-DR-5912

**May 22, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

## Case Summary

Larry Powell ("Husband") and Vanessa Powell ("Wife") appeal the trial court's division of assets in the dissolution of their marriage. Wife argues that the trial court erred by dividing the marital estate unequally, and Husband argues that the trial court erred by requiring him to make a $309,885 cash-equalization payment to Wife within 120 days. Because we conclude that the trial court did not err when it divided the marital estate unequally and ordered Husband to make a $309,885 cash-equalization payment to Wife within 120 days, we affirm.

## Facts and Procedural History

Husband and Wife were married in 1987. Each has an adult child from a previous marriage, and they have one adult daughter together. Husband and Wife separated in October 2012 after twenty-five years of marriage. Wife filed her dissolution petition in November 2012.

Husband and Wife worked consistently throughout the marriage. Husband is a teacher and Wife is a surgical technologist. Two pieces of real estate make up the bulk of the marital estate: the marital home and surrounding land, worth approximately $150,000, and Powell's Duck Creek Farms ("Duck Creek"), 158 acres of farmland worth approximately $885,000. Husband owned the marital home before marrying Wife, and he inherited Duck Creek during the marriage. Duck Creek has been in Husband's family for more than 100 years.

The trial court held a final hearing on Wife's dissolution petition in June 2013. Wife testified that Duck Creek operates as "a small corporation that was started in 1980 .

. . . in order to lease, farm, [and] improve the land so that [Husband's family] could generate income on that [land]." Tr. p. 35. At the time of the final hearing, Husband was Duck Creek's sole shareholder. *Id.* at 38. Throughout the marriage, Husband had done landscaping, remodeling, and maintenance work for Duck Creek. *Id.* at 39-40. After Husband's father passed away, Wife admitted that Husband "took on basically all the responsibilities of [Duck Creek]," which required him to work on weeknights and weekends. *Id.* at 40-41. Wife acknowledged that Duck Creek had been in Husband's family for more than a century, but she requested that a portion of it be given to her, saying, "I've spent a quarter of my life . . . on this farm and have raised our kids there . . . . I liked to work the land and help do things . . . to make this our place to live." *Id.* at 52.

Husband asked the trial court for an unequal division of the marital estate, explaining that he owned the marital home before marrying Wife and had inherited Duck Creek during the marriage. *Id.* at 83. With respect to Duck Creek, Husband testified that he "kept everything separate for th[e] farm" and none of his income—or Wife's—was used to maintain Duck Creek.[1] *Id.* at 93.

The trial court granted Wife's petition for dissolution and entered a dissolution decree dividing the marital estate. Appellant's App. p. 4-11. In the decree, the trial court made a number of findings regarding Duck Creek and the marital home:

> Wife had no involvement in the acquisition of [] Duck Creek or the marital home and surrounding property.
>
> Wife did assist over a twenty-five (25) year period to the maintenance/improvement of the marital home and the farm property, although the extent of her contribution was disputed.

---

[1] According to Husband, Duck Creek is largely self-sustaining: "It doesn't really make anything and it doesn't really go in the hole a whole lot." Tr. p. 93.

Likewise, Wife's efforts on behalf of the family enabled Husband to spend the better part of his time, after teaching duties, [dedicated] to the maintenance/improvement of the marital home.

The value of [Duck Creek] was $300,000 in 1980. On April 15, 2001, when all shares of [Duck Creek] were transferred to Husband the value was $382,100. The value is now $885,000.

* * * * *

Wife assisted Husband in caring for both properties during the marriage although it is clear Husband did the primary work on the farm and attempted to segregate the income/expenses for the farm from other expenses.

* * * * *

Husband retained sole ownership of the marital home and [Duck Creek].

* * * * *

The marital home with its 11.04 acres was sold/transferred/gifted between Husband, his sister, and his parents in a convoluted manner, the first such transfer provided to the court was in 1980 – well before the parties' marriage; Husband has been the sole owner of this parcel since 1996 . . . .

Husband built the marital home prior to his [] marriage [to Wife].

*Id.* at 6-8 (formatting altered). The court also found that the parties had well-established careers with similar income potential, and both had retirement accounts. *Id.* at 9.

The trial court concluded that Husband had "rebutted the presumption that an equal division of the marital estate is appropriate" and awarded Husband Duck Creek and the marital home. *Id.* at 11. Husband also received a number of other items, including a motorcycle, two cars, and a truck. *Id.* at 12 (spreadsheet). The trial court concluded that "a distribution of 70% to Husband and 30% to Wife is fair and equitable . . . ." *Id.* at 11. In order to achieve this 70/30 split after distribution of the marital assets, Husband was ordered to make a cash-equalization payment of $309,885 to Wife within 120 days. *Id.*

If Husband was not able to make the cash-equalization payment, the trial court ordered him to "immediately place a sufficient amount of either property for sale . . . ." *Id.*

Husband now appeals, and Wife cross-appeals.

**Discussion and Decision**

On appeal, Wife argues that the trial court erred in determining that Husband had rebutted the presumption of an equal division of the marital estate. Husband argues that the trial court erred by requiring him to make a $309,885 cash-equalization payment to Wife within 120 days.

"The division of marital assets lies within the sound discretion of the trial court, and we will reverse only for an abuse of discretion." *Hartley v. Hartley*, 862 N.E.2d 274, 285 (Ind. Ct. App. 2007) (citing *DeSalle v. Gentry*, 818 N.E.2d 40, 44 (Ind. Ct. App. 2004)). A party challenging the trial court's marital-property division must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our review on appeal. *Id.* "We may not reweigh the evidence or assess the credibility of the witnesses, and we will consider only the evidence most favorable to the trial court's disposition of the marital property." *Id.* "Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court." *Id.*

**I. Division of the Marital Estate**

At issue is the trial court's division of the marital estate. An equal division is presumed to be just and reasonable. *See* Ind. Code § 31-15-7-5. However, that presumption may be rebutted by a party who presents relevant evidence, including

5

evidence concerning the following factors, that an equal division would *not* be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

(A) before the marriage; or

(B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

*Id.*

Indiana Code section 31-15-7-4(a) is also relevant here. Section 31-15-7-4(a) requires a trial court to divide all property of the parties, regardless of whether it was:

(1) owned by either spouse before the marriage;

(2) acquired by either spouse in his or her own right:

(A) after the marriage; and

(B) before final separation of the parties; or

(3) acquired by their joint efforts.

6

In other words, all property goes into the marital pot. *See Hill v. Hill*, 863 N.E.2d 456, 460 (Ind. Ct. App. 2007) (citing *Beard v. Beard*, 758 N.E.2d 1019, 1025 (Ind. Ct. App. 2001), *trans. denied*). "This 'one-pot' theory insures that all assets are subject to the trial court's power to divide and award." *Id.* (citing *Thompson v. Thompson*, 811 N.E.2d 888, 914 (Ind. Ct. App. 2004), *trans. denied*).

Because Indiana law permits the presumption of an equal distribution to be rebutted, in certain situations one party may receive significantly more than half of the net marital estate. *See Trost-Steffen v. Steffen*, 772 N.E.2d 500, 507 (Ind. Ct. App. 2002) (affirming trial court's unequal division of the marital estate in which the wife received approximately eighty-five percent of the estate), *trans. denied*; *see also In re Marriage of Stetler*, 657 N.E.2d 395, 398 (Ind. Ct. App. 1995) (trial court properly awarded the husband approximately ninety percent of the marital estate based on the short duration of the marriage and the fact that substantially all of the marital assets were acquired through the husband's sole efforts).

Here, the trial court concluded that Husband had rebutted the presumption of an equal division of the marital estate. In reaching this conclusion, the trial court made a number of findings regarding the factors set forth in Section 31-15-7-5—particularly with respect to Husband's inheritance of Duck Creek and pre-marriage ownership of the marital home—which we summarize here:

- Wife had no involvement in the acquisition of Duck Creek or the marital home
- Husband built the marital home, which he owns, before marrying Wife
- Husband retained sole ownership of the marital home and Duck Creek during the marriage

7

- Wife did help maintain and improve the marital home and Duck Creek during the marriage, although the extent of her involvement was disputed
- Wife's efforts allowed Husband to spend his free time maintaining and improving the marital home
- Duck Creek's value increased from approximately $300,000 to $885,000 during the marriage
- Husband did the primary work on the farm and kept income and expenses for the farm separate from other expenses

From the trial court's findings we can conclude that the court deviated from an equal division in order to account for the property Husband brought to the marriage and inherited during it: the marital home and Duck Creek. We acknowledge, as the trial court did, that Wife's contributions to the marriage allowed Husband to spend his time maintaining and improving these properties. But, as the court also noted, Wife had no involvement in acquiring either property, and despite Wife's assistance, Husband did the primary work on Duck Creek and segregated the income and expenses associated with its upkeep. It is also clear that the trial court considered the other factors of Section 31-15-7-5, expressly finding that both parties have well-established careers with similar income potential, and both have retirement accounts.

The presumption that the trial court considered and complied with the applicable statute when dividing the marital estate is one of the strongest presumptions applicable to our review on appeal. For our purposes, the relevant inquiry is whether the trial court's determination that Husband had rebutted the presumption of an equal division of the net estate was against the logic and effect of the facts and circumstances before the court, including the reasonable inferences to be drawn therefrom. *See Trost-Steffen*, 772 N.E.2d at 507. We conclude that it was not.

8

## II. Cash-Equalization Payment

Husband challenges the trial court's order that he make a cash-equalization payment of $309,885 to Wife within 120 days. He argues that he can only make this payment "if he sells about 44% of [Duck Creek], which has been in his family for over 100 years." Appellant's Br. p. 4-5.

When dividing marital property, trial courts are guided by Indiana Code section 31-15-7-4(b), which provides:

> The court shall divide the property in a just and reasonable manner by:
>
> (1) division of the property in kind;
>
> (2) setting the property or parts of the property over to one (1) of the spouses and requiring either spouse to pay an amount, either in gross or in installments, that is just and proper;
>
> (3) ordering the sale of the property under such conditions as the court prescribes and dividing the proceeds of the sale; or
>
> (4) ordering the distribution of benefits . . . that are payable after the dissolution of marriage, by setting aside to either of the parties a percentage of those payments either by assignment or in kind at the time of receipt.

Section 31-15-7-4(b) allows the trial court to divide the marital property by awarding physical assets to one of the spouses and a money award representing a portion of those physical assets to the other spouse. The trial court has the discretion to divide the property in this way "even where the party receiving the non-cash property must liquidate a portion of that property" to pay the cash award to the former spouse. *Neffle v. Neffle*, 483 N.E.2d 767, 769 (Ind. Ct. App. 1985) (citing *Burkhart v. Burkhart*, 169 Ind. App. 588, 349 N.E.2d 707 (Ind. Ct. App. 1976)), *trans. denied.*

9

Husband received Duck Creek in the dissolution decree as he requested. Duck Creek's value is approximately $885,000. Before the cash-equalization payment, the trial court awarded Husband marital assets worth $1,159,398 and awarded Wife marital assets worth $54,192. *See* Appellant's App. p. 12-13 (spreadsheet). After this asset division, a cash-equalization payment was necessary to achieve the 70/30 split the trial court determined was appropriate. We cannot say that the trial court acted unjustly or unreasonably in ordering Husband to make a $309,885 cash-equalization payment to Wife. *See Neffle*, 483 N.E.2d at 769.

Nor are we swayed by Husband's argument that he must sell a portion of Duck Creek to meet this obligation. In addition to Duck Creek, the trial court awarded Husband the marital home and a number of other items, including a motorcycle, two cars, and a truck. It is reasonable to conclude that by selling some of these items or securing a loan on the properties, Husband may avoid selling any portion of Duck Creek.

Affirmed.

NAJAM, J., and BROWN, J., concur.